No. 95-046

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

ROBERT BRUCE LANE,

    Defendant and Appellant.

FILED

NOV 14 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Patrick D. Sherlock, Sherlock and Nardi, Kalispell,
Montana

    For Respondent:

        Joseph P. Mazurek, Attorney General, Barbara C.
Harris, Assistant Attorney General, Helena, Montana;
Thomas J. Esch, Flathead County Attorney, Valerie D.
Wilson, Deputy Flathead County Attorney, Kalispell,
Montana

Submitted on Briefs:    June 13, 1996

Decided:    November 14, 1996

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Robert Bruce Lane (Robert) appeals his conviction in the District Court of the Eleventh Judicial District, Flathead County, of one count of forgery, a felony.

We address the following issues on appeal:

1. Did the District Court err in denying Robert's motion to dismiss for lack of a speedy trial?

2. Was Robert's right to confront witnesses violated by the procedure used by the State in interviewing witnesses prior to trial?

3. Was there sufficient evidence to support the jury's verdict finding Robert guilty of one count of forgery?

Factual and Procedural Background

On April 14, 1994, Robert was charged by complaint with two counts of forgery pursuant to § 45-6-325, MCA. The charges stemmed from two incidents where Robert allegedly forged his wife's signature.

Robert and Sydney Island (Sydney) were married on June 18, 1992. Shortly after their marriage, Robert and Sydney obtained a residential loan from the Whitefish Credit Union. On May 21, 1993, Robert and Sydney obtained a second loan from the credit union, to help Robert start a home inspection business.

The first count of forgery related to a third loan with the credit union. On November 4, 1993, Robert went to Whitefish Credit Union to obtain a loan ostensibly to pay off property taxes on the family home and to pay off the balance of the second loan. Robert

2

took the loan application home to get Sydney's signature. When the loan application was returned to the credit union, it contained the signature "Sydney I. Lane."

The amount of this third loan was $3,557.60. After paying off the second loan and the costs of obtaining this third loan, Robert received $1,529.99. Sydney later stated that she was unaware of this loan and that she did not sign the loan application. She contended that Robert forged her signature on the loan application.

The second count of forgery related to a draft issued by AVCO Financial Services (AVCO) to "Sydney L. Island." Sydney had previously purchased appliances for the household through AVCO. It is AVCO's policy to periodically send "express checks" to customers in good standing. These checks are accompanied by a letter explaining the terms of the loan undertaken when the person to whom the check was made out cashes the check.

AVCO sent one such check for $1,500 to Sydney in May 1993. This check was cashed at the Whitefish Credit Union on May 28, 1993. A deposit of $400 was made to Robert and Sydney's joint account at the credit union and $1,100 was given to Robert in cash. Sydney later claimed that she had never seen the AVCO check and that she had no knowledge of the loan until the end of March 1994, when she found, in a drawer in the garage, notices of late payments from AVCO. Sydney claimed that even though her name appeared on the back of the AVCO check as the endorser, she did not sign the check, nor did she authorize anyone else to sign it on her behalf. She claimed that Robert forged her signature on the check.

3

Robert was arrested on the forgery charges on April 15, 1994. A preliminary hearing was set for May 11, 1994, and the case was bound over for trial. Robert was arraigned on June 30, 1994, at which time he pleaded not guilty. At his arraignment, the District Court set the omnibus hearing for August 11, 1994, and the trial for October 11, 1994. Robert did not object when the court set October 11, as the trial date.

On October 6, 1994, the District Court continued the trial for one week. Robert subsequently filed a motion to dismiss for lack of a speedy trial. This motion was heard and denied on October 12, 1994. A trial by jury was held on October 18 and 19, 1994, and Robert was found guilty of one count of forgery, a felony, relating to the AVCO check. At the November 29, 1994 sentencing hearing, Robert was sentenced to twenty years in Montana State Prison with five years suspended.

## Issue 1

Did the District Court err in denying Robert's motion to dismiss for lack of a speedy trial?

Robert was arrested on April 15, 1994, and incarcerated until his trial on October 18, 1994, a period of 186 days. On October 11, 1994, he filed a motion to dismiss for lack of a speedy trial which was subsequently denied by the District Court.

The Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee a criminal defendant the right to a speedy trial. Whether that right has been violated is determined by a four-part test set out in

4

Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116-17, and adopted by this Court in State ex rel. Briceno v. Dist. Ct. of 13th Jud. Dist. (1977), 173 Mont. 516, 518, 568 P.2d 162, 163-64.

This test requires a balancing of the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right by the defendant; and (4) prejudice to the defendant. State v. Collier (Mont. 1996), 919 P.2d 376, 381-82, 53 St.Rep. 534, 536 (citing State v. Matthews (1995), 271 Mont. 24, 27-28, 894 P.2d 285, 287). All four factors are weighed by considering the facts and circumstances of each case; no one factor is determinative. Collier, 919 P.2d at 382.

The first factor, length of the delay, triggers further inquiry into the remaining three factors. It is not necessary to consider the remaining factors unless the length of the delay is presumptively prejudicial. Collier, 919 P.2d at 382 (citing State v. Eklund (1994), 264 Mont. 420, 424, 872 P.2d 323, 326). When considering the length of the delay, no regard is given to which party caused the delay. Collier, 919 P.2d at 382.

Robert was arrested on April 15, 1994, and trial was held on October 18, 1994, a delay of 186 days. We have previously stated that a delay of over 200 days will trigger further analysis. Collier, 919 P.2d at 382. However, a lesser period also may be presumptively prejudicial depending on the facts of each case. State v. Stewart (1994), 266 Mont. 525, 529, 881 P.2d 629, 632 (citing State v. Bartnes (1988), 234 Mont. 522, 527, 764 P.2d 1271,

5

1275). Indeed, in Bartnes, we determined that a 175-day delay, when combined with the circumstances of the case, necessitated review of the remaining factors. Here, while the 186-day delay is not presumptively prejudicial on a stand-alone basis we conclude that it is presumptively prejudicial when combined with the fact that Lane was incarcerated for the entire period. Thus, we must consider the remaining three factors. Because of the presumption of prejudice, the State has the burden of providing a reasonable explanation for the delay, and for showing that Lane was not prejudiced by the delay. Matthews, 894 P.2d at 287.

The second factor, reason for the delay, requires us to allocate portions of the overall delay to the party responsible for causing that particular delay. In this case, neither Robert nor the State moved to continue the trial; the only continuance was at the behest of the District Court. Robert concedes that the 186-day delay in this case was institutional delay caused by the court's case load. Institutional delay, though charged against the State, weighs less heavily than intentional delay. State v. Gould (1995), 273 Mont. 207, 216, 902 P.2d 532, 538.

The third factor, assertion of the right by the defendant, was satisfied when Robert moved to dismiss on speedy trial grounds prior to trial. However, by filing his motion to dismiss only one week before trial was to commence, Robert exhibited a lack of actual interest which should be considered in balancing the Barker factors. State v. Thompson (1993), 263 Mont. 17, 32-33, 865 P.2d 1125, 1135 (citing State v. Mooney (1991), 248 Mont. 115, 119, 809

6

P.2d 591, 594). As we pointed out in Thompson, a defendant's failure to object to a trial date at the omnibus hearing must be considered in the defendant's later assertion of a claim of denial of a speedy trial. Thompson, 865 P.2d at 1135. In the present case, Robert did not object to the October 11th trial date prior to filing his motion to dismiss.

The fourth factor, prejudice to the defendant, is analyzed by assessing three interests which the right to a speedy trial was designed to protect: (1) prevention of oppressive pretrial incarceration; (2) minimization of the defendant's anxiety and concern; and (3) avoidance of impairment of the defense. The last of these interests is the most critical. Collier, 919 P.2d at 383.

First, Robert was incarcerated for the full 186 days. However, his incarceration was in part a result of charges in Jefferson County. In fact, Robert was held in the Jefferson County Jail awaiting trial on charges there until a few days before his trial on the Flathead County charges. This Court has previously held that where a defendant is incarcerated on separate charges, there is no prejudice resulting from pretrial incarceration in the case at hand. Gould, 902 P.2d at 539 (citing State v. Hembd (1992), 254 Mont. 407, 414, 838 P.2d 412, 416). Under these circumstances, Robert's incarceration was neither oppressive nor prejudicial.

Second, Robert contends that knowing he had lost his job and thus could not continue monthly payments on his bills was cause for him to suffer from anxiety and concern. However, this Court should not presume prejudice in the absence of anxiety and concern which

7

exceeds that inherent in being charged with a crime. State v. Moore (1994), 268 Mont. 20, 69, 885 P.2d 457, 487-88 (overruled on other grounds.) Here, Robert would have been in custody in any event because of the Jefferson County charges. His inability to pay his bills is not sufficient evidence of anxiety and concern to be prejudicial to his defense.

Third, Robert contends his defense was impaired by the delay in this case because the witnesses who testified "could" have been affected by the delay. However, Robert presents no evidence to support his assertions that the witnesses' memories have dimmed or that evidence was lost.

Therefore, weighing the facts and circumstances in this case with the factors set forth in Barker establishes that Robert did not suffer any prejudice in his defense from the delay. Accordingly, we hold that Robert's right to a speedy trial was not violated and the District Court did not err in denying his motion to dismiss on speedy trial grounds.

### Issue 2

Was Robert's right to confront witnesses violated by the procedure used by the State in interviewing witnesses prior to trial?

On October 12, 1994, following the District Court's denial of Robert's motion to dismiss, the prosecutor and defense counsel discussed witness interviews. The prosecutor agreed to have the witnesses available for interviews at the prosecutor's office. Arrangements for the times of these interviews was set out in a

8

letter, dated October 13, 1994, from the prosecutor to defense counsel. The letter stated that three of the witnesses were available the following day for interviews and the fourth witness was available the following Monday.

When defense counsel arrived for the interviews, he had with him a court reporter. He asserted that the interviews were actually depositions and requested that Robert be allowed to be present. The prosecutor refused to have Robert brought from the jail for the interviews.

Robert contends that it was error for the State not to ensure his presence at the witness interviews. He argues that under § 46-15-202(5), MCA, a defendant held in custody must be allowed to be present at all depositions unless he has waived his right in writing.

The pretrial interviews in this case were not depositions as contemplated by Title 46, Chapter 15, part 2, of the Montana Code. Section 46-15-201, MCA, provides in pertinent part:

> **When depositions may be taken.** (1) In district or municipal court cases, a deposition may be taken if it appears that a prospective witness:
> (a) is likely to be either unable to attend or otherwise prevented from attending a trial or hearing;
> (b) is likely to be absent from the state at the time of the trial or hearing; or
> (c) is unwilling to provide relevant information to a requesting party and the witness's testimony is material and necessary in order to prevent a failure of justice. The court shall, upon motion of any party and proper notice, order that the testimony of the witness be taken by deposition and that any designated books, papers, documents, or tangible objects, not privileged, be introduced at the time the deposition is taken.

None of the situations envisioned by this statute applied in the

9

case before us. There was no showing on the record that a deposition was authorized because the prospective witness was unable to attend or otherwise prevented from attending the trial, was likely to be absent from the state at the time of the trial, or was unwilling to provide relevant information to defense counsel. Thus, notwithstanding that defense counsel brought a court reporter to record the proceedings, the pretrial interviews were merely interviews and not depositions. Furthermore, this Court has previously stated that:

> [T]he right of a defendant to confront his accusers is not equivalent to a constitutionally compelled rule of pretrial discovery. Rather, the right of confrontation is a *trial* right, guaranteeing an opportunity for effective cross-examination. See Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.E.2d 40 (1987).

State v. Reynolds (1990), 243 Mont. 1, 7-8, 792 P.2d 1111, 1115 (quoting People v. Exline (Colo.App. 1988), 775 P.2d 48, 49).

In addition, even if one of the situations contemplated by § 46-15-201(1), MCA, were applicable in this case, there was no motion made to the court requesting that depositions be taken, nor was there any order of the court that the testimony be taken by deposition. Section 46-15-201(1)(c), MCA. Moreover, defense counsel did not provide written notice of the time and place for taking the "depositions" as set forth in § 46-15-202(1), MCA, nor did defense counsel notify the officer having custody of Robert of the time and place set for the "depositions" as required under § 46-15-202(5), MCA.

Accordingly, we hold that Robert had no legal right to be present at the pretrial interviews and that his constitutional

10

right to confront witnesses was not violated.

## Issue 3

Was there sufficient evidence to support the jury's verdict finding Robert guilty of one count of forgery?

Robert contends that the verdicts on the two counts of forgery are inconsistent and that, as a matter of law, since he was found not guilty on Count I, he must also be found not guilty on Count II, as the proof for both counts is the same. Robert also contends that there was no evidence presented at trial that the AVCO draft was signed by him or that he intended to defraud AVCO. He argues that the only testimony against him is that of Sydney who filed a petition to dissolve their marriage shortly after accusing him of the forgeries.

This Court reviews a claim of sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Leyba (1996), 915 P.2d 794, 798, 53 St.Rep. 7, 10 (citing State v. Arlington (1994), 265 Mont. 127, 146, 875 P.2d 307, 318).

Robert's argument that the verdicts are inconsistent because the proof as to Count I is the same as the proof as to Count II, is without merit. Count I involved the loan application presented to Whitefish Credit Union in November 1993. Testimony regarding this transaction was given by the Whitefish Credit Union loan officer who handled the loan. Count II involved a check from AVCO

11

presented to Whitefish Credit Union in May 1993. Testimony regarding this transaction was given by the manager of AVCO and by the Whitefish Credit Union teller that processed the check. Thus, contrary to Robert's contentions, the proof on each count was not the same.

Likewise, Robert's contention that the evidence presented at trial regarding the AVCO check was insufficient for a conviction of forgery, is also without merit. The manager of AVCO testified that a check for $1,500 was mailed to Sydney and was subsequently cashed. Sydney testified that the signature endorsing the AVCO check was not hers. The Whitefish Credit Union teller who cashed the AVCO check testified that she was sure it was Robert who presented the check to her to cash because his was the last signature on the back of the check below Sydney's purported signature. The teller stated that she knew Robert because she had seen him regularly during the previous two years when he came to the credit union to transact business.

Montana's forgery statute provides, in pertinent part:

(1) A person commits the offense of forgery when with purpose to defraud the person knowingly:
. . .
    (b) *issues or delivers the document or other object knowing it to have been thus made or altered;*
. . .
    (2) A purpose to defraud means the purpose of causing another to assume, create, transfer, alter, or terminate any right, obligation, or power with reference to any person or property.

Section 45-6-325, MCA (emphasis added). Thus the State was not required to prove that Robert actually signed the check, only that he delivered it to the Whitefish Credit Union knowing that it had

12

not been signed by Sydney. Consequently, after viewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Accordingly, we hold that there was sufficient evidence to support the jury's verdict finding Robert guilty of forging the AVCO check.

Affirmed.

_____
                            Justice

We Concur:

_____
            Chief Justice

_____

_____

_____
            Justices

13