No. 96-279

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

THOMAS EARL FOSHEE,

      Defendant and Appellant.

FILED

APR 29 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifteenth Judicial District,
                 In and for the County of Sheridan,
                 The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Loren J. O'Toole, II, O'Toole & O'Toole, Plentywood, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General
          Cregg W. Coughlin, Assistant Attorney General, Helena, Montana

          Steven Howard, Sheridan County Attorney, Plentywood, Montana

Submitted on Briefs: February 13, 1997

Decided:  April 29, 1997

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Thomas Earl Foshee (Foshee), appeals from the Fifteenth Judicial District Court's order denying his motion to dismiss the Information on the grounds that he was denied a speedy trial. We affirm.

We address the following issue on appeal:

Did the District Court err in denying Foshee's motion to dismiss for denial of a speedy trial?

## BACKGROUND

On December 24, 1994, Foshee contacted the Sheridan County Sheriff's Office and informed the dispatcher that he "had just done the worst thing a man could do," he had killed his wife Katherine Foshee. Following his December 24, 1994 arrest, Foshee made an initial appearance before the Justice of the Peace on December 25, 1994. He was formally charged with deliberate homicide in violation of § 45-5-102(1)(a), MCA, on December 30, 1994, and pled not guilty. Foshee did not request bond until September of 1995. Foshee was incarcerated from his arrest on December 24, 1994, through December 2, 1995, when he entered an Alford plea.

On May 10, 1995, the District Court conducted an omnibus hearing and set an August 21, 1995, trial date. At the hearing, although Foshee did not waive his right to a speedy trial,

2

he did not object to the August trial setting and did not request an earlier setting. Meanwhile, the Montana State Crime Laboratory continued to hold and analyze the 75 pieces of evidence produced in this case.

On July 5, 1995, Foshee filed a motion to dismiss on grounds that he had been denied a speedy trial. Following a July 26, 1995, hearing on the matter, the District Court entered an order denying the motion to dismiss. In its order, the District Court held that the delay in bringing this case to trial was the result of a backlog at the State Crime Laboratory coupled with the volume of evidence which the State Crime Laboratory needed to analyze before trial. The court noted that there was no showing of bad faith and that Foshee had not requested bond. The court held that the delay was entirely institutional and, after reviewing the totality of the circumstances, that the motion to dismiss should be denied.

After additional delay in obtaining evidence from the State Crime Laboratory, on August 2, 1995, Foshee sought a continuance and a new trial date was set for December 4, 1995. While awaiting the December 4, 1995 trial date, Foshee's expert witness had an opportunity to examine all of the physical evidence that the State had taken in the case. Two days before the trial date, Foshee entered an Alford plea pursuant to § 46-12-212(2), MCA. In entering this plea, Foshee was unwilling to admit to any element of the offense that would provide a factual basis for a plea of guilty. See § 46-12-212, MCA. Foshee reserved his right to appeal the speedy trial issue pursuant to § 46-12-204, MCA.

3

## DISCUSSION

Did the District Court err in denying Foshee's motion to dismiss for lack of speedy trial?

The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

In Montana, a criminal defendant's right to a speedy trial is guaranteed by both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. State v. Weeks (1995), 270 Mont. 63, 891 P.2d 477. In determining whether a criminal defendant has received a speedy trial, this Court has adopted the test set forth by the United States Supreme Court in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101. See State v. Thompson (1993), 263 Mont. 17, 865 P.2d 1125; State v. Stewart (1972), 266 Mont. 525, 881 P.2d 629. Under the four-part test outlined by the United States Supreme Court in Barker, a court may consider the length of delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant in determining whether a criminal defendant has been deprived of his or her right to a speedy trial. Barker, 407 U.S. at 530. Of these four factors, this Court will not look to one factor as determinative, rather it will consider all four in light of the facts and circumstances of the particular case. Stewart, 881 P.2d at 632.

In the instant case, the 233-day delay between Foshee's December 24, 1994 arrest and August 21, 1995 trial date is sufficient to require further consideration of the additional

4

factors set forth in Barker. See State v. Dahms (1992), 252 Mont. 1, 825 P.2d 1214. In Stewart, this Court held "the first factor, length of delay, is of primary importance. The other factors need not be considered unless the length of delay is presumptively prejudicial." Stewart, 881 P.2d at 632. This initial determination as to whether the length of delay triggers further inquiry, is made by reviewing the entire delay without allocating the amount of delay attributable to either party. Dahms, 825 P.2d at 1220 (citing State v. Curtis (1990), 241 Mont. 288, 787 P.2d 306). As this Court explained in State v. Wombolt (1988), 231 Mont. 400, 753 P.2d 330, a delay of over 200 days will generally trigger further analysis of the speedy trial issue. Here, the 233-day delay requires inquiry into the three additional factors set forth in Barker.

In considering the reason for delay, this Court will determine which party is responsible for causing a given period of delay as well as the reason behind the delay. See State v. Gould (1995), 273 Mont. 207, 902 P.2d 532; State v. Curtis (1990), 241 Mont. 288, 787 P.2d 306. Because the 233-day delay triggered additional inquiry, the State had the burden of providing a reasonable explanation for the delay and showing that the defendant was not prejudiced by the delay. State v. Williams-Rusch (Mont. 1996), 928 P.2d 169, 176-77, 53 St. Rep. 1224, 1229; State v. Collier (1996), 277 Mont. 46, 55, 919 P.2d 376, 381-82. In the instant case, it is undisputed that the delay in bringing this case to trial can be attributed entirely to the State. The backlog at the State Crime Laboratory coupled with the volume of evidence (75 items) which needed to be analyzed was the explanation for the

5

delay. The delay was thus "institutional" in nature. Although institutional delay is chargeable to the State it weighs less heavily than purposeful delay. Gould, 902 P.2d at 538. Because the delay in this case, attributable to the examination of over 75 pieces of evidence, is institutional, this Court will give the delay less weight than if it were purposeful delay.

The third element of the Barker test requires a defendant to assert his right to a speedy trial. In Williams-Rusch, this Court explained that a defendant's failure to object to a trial date at the omnibus hearing must be considered in the defendant's later assertion of a claim of denial of a speedy trial. Williams-Rusch, 928 P.2d at 178 (citing State v. Thompson (1993), 263 Mont. 17, 32-33, 865 P.2d 1125, 1135). At the May 10, 1995 omnibus hearing, Foshee's counsel stated, "I want to point out to the court that, you know, I'm not waiving any speedy trial requirements that are pressed upon the State by calendaring the matter, and I'm so informing the county attorney too." Although it is clear that Foshee did not waive his right to a speedy trial, it is equally clear that he did not object to the August trial date. However, the instant case differs from Williams-Rusch in two respects. First, Foshee's trial date was originally scheduled only three months after the omnibus hearing while the trial date in Williams-Rusch was scheduled six months after the omnibus hearing. Second, once Foshee realized there would be additional delay obtaining evidence from the State Crime Laboratory, his counsel moved to dismiss on speedy trial grounds. Foshee's motion to dismiss was filed over one month before the August trial date. In contrast, the defendant in Williams-Rusch did not raise the denial of speedy trial until one week before trial. After

6

considering each of these facts, we hold that Foshee did sufficiently assert his right to a speedy trial.

A criminal defendant must somehow show that he or she has been prejudiced by the delay before this Court will hold that the State has violated his or her right to a speedy trial. State v. Waters (1987), 228 Mont. 490, 494, 743 P.2d 617, 620. In determining the prejudice to the defendant, this Court will analyze three interests which the right to a speedy trial is designed to protect: (1) avoiding oppressive pretrial incarceration; (2) minimizing the defendant's anxiety and concern; and (3) avoiding impairment of the defense. State v. Hembd (1992), 254 Mont. 407, 413-14, 838 P.2d 412, 416. Of these three elements, the possibility that the defense will be impaired is most serious because the inability of the defendant to adequately prepare his case skews the fairness of the entire system. Barker, 407 U.S. at 532.

Foshee argues that the 233-day delay between his arrest and trial date impaired his defense in three respects. First, Foshee maintains that the incarceration was oppressive and hindered his ability to gather evidence, contact witnesses and otherwise prepare his defense. Second, Foshee contends that this delay gave the State seven months to prepare its case while he only had four weeks to review the evidence after it had been analyzed. Finally, Foshee maintains that this delay impaired his defense because the State failed to disclose slides of the laboratory tests until July 13, 1995. These claims of prejudice will be addressed in the order raised by Foshee.

7

Foshee contends that his incarceration prior to trial was oppressive. Although Foshee's 233-day incarceration was a significant period of time, this delay was attributable to the processing of numerous pieces of evidence from the crime scene. Thus, the delay was institutional. As explained above, although institutional delay is chargeable to the State, it weighs less heavily than purposeful delay. Gould, 902 P.2d at 537-38. Under the circumstances of this case, where the delay is attributable to a backlog at the State Crime Laboratory and where Foshee did not request that bond be set until two months after filing his motion to dismiss, we hold that the delay was not oppressive.

The right to a speedy trial is also designed to minimize a defendant's anxiety and concern. In Curtis, this Court held that a certain amount of anxiety and concern is inherent in being accused of a crime and recognized that

> "[t]he State's burden to show a lack of prejudice becomes considerably lighter in the absence of evidence of prejudice to the appellant." It necessarily follows that the State's burden to show a lack of anxiety becomes considerably lighter in the absence of more than marginal evidence of anxiety.

Curtis, 787 P.2d at 316 (citation omitted). Foshee argues that the State's failure to produce its evidence and analysis created excessive anxiety and concern. Foshee explains that he was placed at a disadvantage because the State had an opportunity to review the evidence for seven months while he was given only four weeks to prepare for trial.

As this Court has previously stated, "it is nearly impossible for the State to prove that anxiety and concern do *not* exist." Williams-Rusch, 928 P.2d at 178 (emphasis added). Due to this difficulty, the State's burden to show a lack of anxiety becomes significantly lighter

8

in the absence of anxiety and concern which exceeds that inherent in being charged with a crime. Williams-Rusch, 928 P.2d at 178. In the instant case, there is no evidence Foshee suffered any more anxiety than that normally inherent in being accused of a serious crime.

Although each of the three factors set out in Hembd must be considered when determining prejudice to a defendant, the most critical factor in gauging prejudice is whether a criminal defendant's ability to present his case has been impaired. Weeks, 891 P.2d at 484. In the instant case, Foshee argues that he was prejudiced by the 233-day delay because the State failed to disclose slides of laboratory tests until July 13, 1995, a little more than a month before the August 21, 1995 trial date. However, Foshee's counsel explained to the trial court that his own expert had carefully "examined all of the physical evidence that the State has taken in this case." After Foshee's expert had an opportunity to review all of this evidence, Foshee pled guilty to the charge against him. Foshee's bare claim of prejudice notwithstanding, there is no indication that the delay in obtaining the evidence denied Foshee and his expert an adequate opportunity to review the slides or the test results. Although the 233-day delay placed the burden of proof on the State, the State has provided a reasonable explanation for the delay and has shown that Foshee did not lose the benefit of any evidence, witnesses, or defenses as a result of the delay.

There is no evidence that the delay actually prejudiced Foshee. In light of the sheer volume of evidence and the complexity of this case, we hold that the 233-day delay was

9

excusable and did not, in fact, prejudice Foshee. We hold that the District Court did not err in denying Foshee's motion to dismiss. Accordingly, we affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10