No. 97-065

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Respondent and Plaintiff,

v.

PHILLIP EARNEST KEATING,

Appellant and Defendant.


APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey Sherlock, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

David F. Ness, Attorney at Law, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,
Elizabeth L. Griffing, Ass't Attorney General, Helena, Montana

Mike McGrath, Lewis and Clark County Attorney,
Vicki Frazier, Deputy Lewis and Clark County Attorney, Helena, Montana


Submitted on Briefs: August 14, 1997

Decided:     November 25, 1997
Filed:


_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Phillip Keating (Keating) appeals from the judgment and commitment entered by the First Judicial District Court, Lewis and Clark County, on a jury verdict finding him guilty of the offense of threats in official matters. He contends that the District Court erred in denying both his motion to dismiss based on speedy trial grounds and his motion for a directed verdict. We affirm.

The issues on appeal are:

1. Did the District Court err in failing to dismiss the case on the grounds of denial of a speedy trial?

2. Did the District Court abuse its discretion when it denied Keatingþs motion for a directed verdict?

BACKGROUND

On the evening of November 22, 1995, Deputy Jack Shamley and Deputy Dave Peterson (collectively the deputies) of the Lewis and Clark County Sheriffþs Department (Sheriffþs Department) attempted to serve civil process on Keating on two separate occasions. During the second attempt, Deputy Peterson approached Keatingþs residence at the Kingþs Carriage Inn while Deputy Shamley waited by the patrol car. When Deputy Peterson knocked, Keating opened the inside, wooden door but not the glassed-in, outer door. Deputy Peterson told Keating that he had papers to serve on him, at which time Keating began to yell at Deputy Peterson that he was trespassing and should leave. The deputies then left the property without accomplishing service of process.

Shortly thereafter, the 911 dispatcher contacted the deputies and told them that Keating had telephoned and made a threat. During that telephone conversation, Keating stated, þFrom this point forward, this is official notice, do not, do not allow officers on property belonging to Phil Keating in Lewis and Clark County for fear they may be killed. . . . Do not go on the property.þ

On November 24, 1995, the State of Montana (State) filed a complaint in the Justice Court of Lewis and Clark County alleging that Keating had committed the offense of threats in official matters. The Justice Court issued an arrest warrant for Keating and set bond at $100,000. On November 27, 1995, the District Court revoked Keatingþs bond on pending assault and drug charges due to various incidents of bizarre and threatening behavior by Keating, including the alleged threat against the law enforcement officers. It ordered Keatingþs arrest and detention without bond pending a hearing. Keating was arrested that same day in Missoula, Montana.

On December 21, 1995, the Justice Court bound Keating over to the District Court for further proceedings on the charge of threats in official matters, a felony, and the State

subsequently filed an information in the District Court charging that offense. After a
bond hearing on December 21, 1995, the District Court ordered bond set at $100,000 for
this case and $100,000 for the assault and drug case and set conditions in the event
Keating posted the bond. Following Keatingþs suggestions, the District Court ordered
him to live in Butte, Montana, with Duane Hanson (Hanson) pending trial. The District
Court also ordered Keating not to enter Jefferson or Lewis and Clark County for any
reason except to visit with his attorney; Hanson was to accompany him on any such
trips.

The conditions subsequently were amended several times. Among other things, the
District Court altered the prohibition against entering Lewis and Clark County þunder any
circumstancesþ to a prohibition against doing so without prior approval of the court.

Keating was arraigned on January 25, 1996, and his trial in this case was
scheduled for April 8, 1996, as the second criminal trial setting on that date. In March
of 1996, Keatingþs attorney moved to withdraw and the District Court granted the motion.
The State also made two discovery motions in March of 1996, which the District Court
granted.

The first case on the District Courtþs calendar went to trial on April 8, 1996, and,
as a result, Keatingþs trial did not occur on that date. Shortly thereafter, and in response
to a motion by the State, the District Court rescheduled Keatingþs trial for July 22, 1996.
In the meantime, Keating obtained new counsel to represent him in both cases and his
trial on the assault and drug charges ended in a mistrial. On July 12, 1996, the District
Court vacated the July 22 trial date for this case and reset it for August 19, 1996.

Keating moved to dismiss for lack of a speedy trial on the morning of trial.
Counsel argued the motion after voir dire and prior to the impanelling of the jury. The
District Court denied the motion and the case proceeded to trial. At the close of the
Stateþs case, Keating moved for a directed verdict. The District Court denied the motion
and the jury ultimately convicted Keating of threats in official matters. Judgment was
entered and Keating appeals.

1. Did the District Court err in failing to dismiss the case on the grounds
of denial of a speedy trial?

As set forth above, Keating filed his motion to dismiss based on denial of his right
to a speedy trial on the morning of trial. Concluding that the motion was untimely, the
District Court denied it.

The Sixth Amendment to the United States Constitution and Article II, Section 24,
of the Montana Constitution guarantee a criminal defendant the right to a speedy

trial.
State v. Matthews (1995), 271 Mont. 24, 27, 894 P.2d 285, 287 (citations omitted). The primary purpose of the right to a speedy trial is protecting defendants from oppressive trial tactics by the State. State v. Gould (1995), 273 Mont. 207, 216, 902 P.2d 532, 538 (citations omitted). We apply the test set forth by the United States Supreme Court in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, to determine whether a defendantþs right to a speedy trial has been violated. Matthews, 894 P.2d at 287 (citing State ex rel. Briceno v. Dist. Ct. of 13th Jud. Dist., Etc. (1977), 173 Mont. 516, 568 P.2d 162). The test requires the balancing of four factors:

1) length of the delay;
2) reason for the delay;
3) defendantþs assertion of the right; and
4) prejudice to the defendant.

Matthews, 894 P.2d at 287 (citations omitted). No single factor is determinative; each is weighed in light of the surrounding facts and circumstances. State v. Williams-Rusch (1996), 279 Mont. 437, 449, 928 P.2d 169, 176 (citation omitted). Whether a defendantþs speedy trial rights have been violated is a question of law. We review a district courtþs conclusions of law to determine whether the interpretation of the law is correct. State v. Foshee (Mont. 1997), 938 P.2d 601, 604, 54 St.Rep. 370, 370-71 (citation omitted).

## Length of the Delay

The first factor, the length of the delay, acts as a triggering mechanism. Matthews, 894 P.2d at 287. If the delay is sufficient to be presumptively prejudicial, analysis of the remaining factors is required. Williams-Rusch, 928 P.2d at 176 (citations omitted). Moreover, while we have declined to establish a þbright lineþ test for determining whether the length of the delay is presumptively prejudicial, a delay of over 200 days usually will trigger the analysis. See State v. Thompson (1993), 263 Mont. 17, 32, 865 P.2d 1125, 1135 (citations omitted).

In this case, the State concedes that the 270-day delay is presumptively prejudicial and triggers the full speedy trial analysis. Thus, we address the remaining three speedy trial factors, keeping in mind that once the delay has been determined to be presumptively prejudicial, the State generally has the burden of providing a reasonable explanation for the delay and showing that the defendant was not prejudiced by the delay. State v.

Tweedy (1996), 277 Mont. 313, 320, 922 P.2d 1134, 1138 (citation omitted).

Reason for the Delay

Consideration of the second Barker factor, the reason for the delay, requires an allocation of the delay attributable to each party. Matthews, 894 P.2d at 287 (citation omitted). Here, the delay began when the first case set for trial on April 8, 1996, proceeded to trial. Three weeks later, the District Court rescheduled Keatingþs trial for July 22, 1996. Meanwhile, Keatingþs trial on the unrelated assault and drug charges ended in a mistrial on July 9, 1996, and the District Court rescheduled that caseþwhich had been pending longerþfor July 22, 1996, thus conflicting with the trial date set for this case. The District Court then scheduled this case for trial on August 19, 1996. On this record, none of the delay in this case can be allocated to Keating. He did not move to continue either the April 8 or the July 22 trial date. Nor did he file motions which necessitated trial delays pending resolution. The delays which occurred were inherent in the system and þ[d]elay inherent in the system is chargeable to the State.þ See State v. Hembd (1992), 254 Mont. 407, 413, 838 P.2d 412, 416 (citation omitted). We conclude, therefore, that the entire delay in this case is chargeable to the State.

We also must weigh the delay chargeable to the State. Tweedy, 922 P.2d at 1138. The approximately 240 days which elapsed prior to the July 22 trial date resulted from both ordinary procedures associated with criminal prosecutions, such as scheduling and holding the omnibus hearing, and the difficulties in settingþand keepingþtrial dates which related to the District Courtþs crowded docket. Such delays are characterized as institutional delay. See Thompson, 865 P.2d at 1135 (citation omitted). Conflict with the trial date set for Keatingþs assault and drug case following the mistrial accounts for the remainder of the delay. This delay also is properly characterized as institutional delay. See State v. Lane (1996), 279 Mont. 128, 133, 927 P.2d 989, 992. None of the delay in this case was intentional delay.

Institutional delay weighs less heavily against the State than intentional delay. Tweedy, 922 P.2d at 1138 (citation omitted). Therefore, while the entire delay is attributable to the State, the State has met its burden of providing a reasonable explanation for the delay by establishing that the delay was institutional rather than intentional. See Tweedy, 922 P.2d at 1138. As a result, the 270-day delay in this case does not weigh heavily against the State.

Assertion of the Right

The third Barker factor requires a defendant to assert the right to a speedy

trial.
Matthews, 894 P.2d at 288. Our rule in Montana is that, if a defendant moves to dismiss
before trial, he has fulfilled the requirement of asserting his constitutional right to a
speedy trial. Tweedy, 922 P.2d at 1139 (citation omitted).

Here, Keating filed his motion to dismiss on the morning of trial, but before the
trial began. Pursuant to Tweedy, his motion was timely filed and the District Court erred
in concluding otherwise.

Technical compliance with the assertion of the right requirement does not end the
discussion of this factor, however. As set forth above, the Barker test requires a
balancing of the speedy trial factors in light of the surrounding facts and circumstances.
Williams-Rusch, 928 P.2d at 176; Matthews, 894 P.2d at 287. Indeed, we previously
have determined that failing to assert the right to a speedy trial until four days before trial
indicates a defendantþs lack of an actual interest in moving the case to trial which should
be considered in the process of balancing the Barker factors. Thompson, 865 P.2d at
1135.

In this case, Keating did not file his motion to dismiss or indicate in any other way
that he was interested in moving his case to trial until the morning of trial. Had he been
interested in doing so, he could have objected in April of 1996, when his trial was
rescheduled to July 22, 1996. It was at that point that speedy trial implications arose
because 240 days would have elapsed by the rescheduled trial date. Keating did not
object to the trial date or indicate any interest in regard to moving his case to trial at that
time. Nor did he do so when the July 22 trial date was vacated and his trial was reset
for August 19, 1996.

The State contends that another indication of Keatingþs lack of interest in moving
this case to trial was his failure to object to the April 8 trial date when it was set at the
omnibus hearing in February of 1996. While the State is correct in positing that a
defendantþs failure to object to a trial date at the omnibus hearing is a consideration in
some cases (see Williams-Rusch, 928 P.2d at 178), Keatingþs failure to object to the trial
date set at the omnibus hearing is not pertinent here.

In Williams-Rusch, the omnibus hearing was held almost eleven months after the
defendant was arrested and a trial date was set for almost six months later.
Notwithstanding that the speedy trial time parameters already had been exceeded by the
time of the omnibus hearing, the defendant did not object at that time to the delayed trial

date. Williams-Rusch, 928 P.2d at 177-78. We concluded that the defendant exhibited a lack of interest in moving her case to trial, which should be considered in the Barker balancing process. Williams-Rusch, 928 P.2d at 178 (citations omitted). In contrast, Keatingþs omnibus hearing was held less than three months after he was originally charged and the April 8, 1996, trial date set at that hearing was only 137 days after the complaint was filed in Justice Court. No speedy trial implications arose at that time and, as a result, Keatingþs failure to object to the trial date set at the omnibus hearing is not a proper consideration in this case.

We conclude that Keatingþs delay in asserting his right to a speedy trial until the morning of trial indicates his lack of an actual interest in moving the case to trial and, as a result, we weigh this factor against him. This factor is not determinative, however, since his motion was technically timely, and it is necessary to complete the Barker balancing process by considering the final factor.

Prejudice to the Defendant

The final factor which must be analyzed under the Barker test is prejudice to the defendant. Prejudice is assessed in light of three interests which the speedy trial right was designed to protect: prevention of oppressive pretrial incarceration; minimization of anxiety and concern; and avoidance of impairment of the defense. Matthews, 894 P.2d at 288 (citation omitted). While each interest is important, impairment of the defense is the most critical. Matthews, 894 P.2d at 288 (citation omitted).

With regard to pretrial incarceration, Keating was held in the Missoula County jail for approximately thirty days while awaiting a bond hearing and before posting bond. He does not contend that this constituted oppressive pretrial incarceration. Moreover, it appears that Keatingþs incarceration pending a bond hearing resulted from the District Courtþs order revoking an earlier bond in the pending assault and drug case, since the Justice Court set bond in the present case at $100,000 when it issued the arrest warrant. When a defendant is incarcerated on separate charges, the pretrial incarceration does not result in prejudice in the case at bar. Lane, 927 P.2d at 992 (citations omitted). On this record, Keatingþs incarceration was neither oppressive nor prejudicial.

With regard to anxiety and concern, we have recognized that a certain amount of anxiety and concern is inherent in being charged with a criminal offense. State v. Weeks

(1995), 270 Mont. 63, 73, 891 P.2d 477, 483 (citation omitted).  We also have indicated
that the anxiety and concern to be assessed under the Barker test is anxiety and concern
which was þaggravated as a result of the delay.þ  Williams-Rusch, 928 P.2d at 178.
þ[S]ince it is nearly impossible for the State to prove that anxiety and concern do not
exist, the Stateþs burden to show a lack of anxiety becomes considerably lighter in the
absence of more than marginal evidence of anxiety.þ  Williams-Rusch, 928 P.2d at 178 (citations omitted).

Here, Keatingþs argument relating to anxiety and concern focuses on bond-related matters.  He contends that the combination of the bond amount and his inability to properly manage his Helena businesses from Butte resulted in financial difficulties which caused him  þa great deal of anxiety and concern.þ  He also contends that, as a result of being prohibited from entering Lewis and Clark or Jefferson County, he was separated from his children, missed his daughterþs high school graduation and was unable to visit his father, who died while Keating was awaiting trial.

The first problem with Keatingþs contentions is that they relate to bond matters rather than anxiety and concern aggravated by the delay in bringing this case to trial.  We will not address the merits of those bond-related matters in the context of the speedy trial analysis.

Furthermore, the main thrust of Keatingþs anxiety and concern argument is that the living and travel restrictions created financial difficulties and separation from his family.  These living and travel restrictions were suggested by Keating himself, however, to encourage the District Court to set bond in light of what the District Court characterized as þbizarreþ behavior and of threats he had made to and against various people in Lewis and Clark and Jefferson Counties while free on bond in the assault and drug case.  We will not allow Keating to rely on bond conditions he proposed to his own benefit at the time they were imposed to establish anxiety and concern in the speedy trial context where, as here, it is clear that the difficulties those conditions caused were entirely predictable.

In addition, with specific regard to Keatingþs contentions regarding his father and his daughter, Keatingþs father died in January of 1996, long before any speedy trial time or delay problems arose in this case.  Moreover, by the time of Keatingþs daughterþs graduation, the District Court had lifted the travel restrictions on several occasions in response to timely motions.  That Keating failed to timely request such a modification for purposes of his daughterþs graduation cannot constitute anxiety and concern

aggravated
by the delay in bringing this case to trial.

Here, there is no evidence that Keating suffered excessive anxiety and concern as a result of the delay in bringing this case to trial. We will not hold the State to the nearly impossible task of proving that anxiety and concern do not exist. See Foshee, 938 P.2d at 606.

Finally, we consider the most critical of the prejudice-related interests the speedy trial right was designed to protect: whether Keatingþs defense was impaired by the delay. See Matthews, 894 P.2d at 288. As set forth above, once the delay has been determined to be presumptively prejudicial, the State has the burden of rebutting the presumption of prejudice. Tweedy, 922 P.2d at 1138. This does not necessarily mean, however, that the State has the burden of coming forward first. Indeed, in addressing the impairment of the defense interest, our recent cases indicate that the defendant ordinarily must come forward with some evidence that the defense was impairedþthat is, prejudicedþas a result of the delay. See, e.g., Foshee, 938 P.2d at 605-07; Lane, 927 P.2d at 993; Tweedy, 922 P.2d at 1139; Matthews, 894 P.2d at 288-89. From a practical standpoint, it would be virtually impossible for the State to rebut presumed prejudice from an allegedly impaired defense without some showing by the defendant of actual impairment resulting in prejudice. Thus, we look first at the evidence Keating presented in support of his allegation that his defense was impaired by the delay in bringing his case to trial.

Keatingþs primary thrust in this regard was that the delay resulted in the unavailability of testimony from his father and two other witnesses to buttress his defense at trial that his threat was a reaction to past harassment by local law enforcement agencies. He also contended that he could remember the events at issue only vaguely. The record is clear, however, that Keatingþs father died prior to the original trial date for this case. Thus, the later trial date did not impair Keatingþs defense in this regard. Similarly, the alleged impairment of the defense due to the unavailability of two other unidentified witnesses is controverted by Keatingþs own testimony, at the hearing on his speedy trial motion, that approximately fifty witnesses could testify to the harassment he allegedly experienced from local law enforcement. Absent some indication that the unavailable witnesses could provide unique information not obtainable from other witnesses, the unavailability of two witnesses out of fifty cannot constitute prejudice.

Finally, although Keating testified that he only vaguely remembered the events

in question, he testified affirmatively at trial as to his purpose in making the threat. Nor did he deny that he made the threat on which the charge was based. While Keatingþs memory may not have been as clear in August of 1996 as it would have been in April of 1996, he made no showing of how that impaired his defense. Taking the minimal evidence Keating presented together with the Stateþs record-based arguments, we conclude that Keatingþs defense was not impaired by the delay.

In summary, although the delay itself and the reason for it weigh against the State, they do not weigh heavily in this case. Keatingþs delay in asserting his right, however, indicates his lack of an actual interest in moving the case to trial. Moreover, Keating did not experience either oppressive pretrial incarceration or excessive anxiety and concern resulting from the delay in bringing his case to trial. Nor did he make a showing of actual impairment to his defense. Thus, while the District Court erred in concluding that Keatingþs motion to dismiss was untimely, a balancing of the Barker factors necessitates our conclusion that Keatingþs right to a speedy trial has not been violated in this case.

We hold, therefore, that the District Court did not err in denying Keatingþs motion to dismiss for lack of a speedy trial.

2. Did the District Court abuse its discretion when it denied Keatingþs motion for a directed verdict?

The State charged Keating with threats in official matters under õ 45-7-102(1)(a)(i), MCA (1995), which provides:

(1) A person commits an offense under this section if the person purposely or knowingly: (a)(i) threatens harm to any person . . . with the purpose to influence the personþs decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter[.]

In the context of this case, it was necessary for the State to prove that Keating: 1) purposely or knowingly 2) threatened harm to law enforcement officers 3) for the purpose of influencing their exercise of discretion. Keating moved for a directed verdict at the end of the Stateþs case, arguing that the State did not establish that his threat to kill officers coming on his property to serve process was made for the purpose of influencing an exercise of discretion. The District Court denied the motion.

A district courtþs decision to grant or deny a motion for a directed verdict lies within its sound discretion and will not be overturned absent an abuse of that discretion.

State v. Romannose (Mont. 1997), 931 P.2d 1304, 1307, 54 St.Rep. 72, 73 (citation omitted). þWe review a trial courtþs denial of a motion for a directed verdict to determine whether, after reviewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.þ  Romannose, 931 P.2d at 1307 (citation omitted).

Keating argues that the State failed to prove two elements of the offense of threats in official matters.  First, he contends that the deputies were not involved in a discretionary duty when they attempted to serve him with civil process because sheriffþs deputies have a statutory duty to serve civil process and Rule 4D, M.R.Civ.P., mandates the manner in which that duty is to be performed.  Keating also argues that his threat was not made for the purpose of influencing an exercise of discretion.  Interspersed throughout both of his arguments is Keatingþs notion that he should have been charged with intimidation rather than threats in official matters, and it is appropriate to dispose of this theory before addressing whether the District Court erred in denying the motion for a directed verdict.

A person commits the statutory offense of intimidation when:

with the purpose to cause another to perform or to omit the performance of any act, he communicates to another, under circumstances which reasonably tend to produce a fear that it will be carried out, a threat to perform without lawful authority any of the following acts:  (a) inflict physical harm on the person threatened[.]

Section 45-5-203(1)(a), MCA (1995).  Thus, it may be true that the charge of intimidation was available to the State in this case.  The law is clear, however, that þwhen the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion.þ  State v. Smaage (1996), 276 Mont. 94, 98, 915 P.2d 192, 194-95 (citation omitted); see also State v. Arlington (1994), 265 Mont. 127, 165, 875 P.2d 307, 330 (citations omitted).  As a result, the fact that a different offense could have been charged has no bearing on whether the State presented evidence from which a rational trier of fact could find the elements of the offense of threats in official matters under õ 45-7-102(1)(a)(i), MCA (1995), beyond a reasonable doubt.  See Smaage, 915 P.2d at 195 (citation omitted).

Keatingþs primary argument is that service of process is not a discretionary function which can serve as the basis for a charge of threats in official matters under õ 45-7-102(1)(a)(i), MCA (1995).  Notwithstanding Keatingþs repeated use of the term þdiscretion-ary function,þ however, õ 45-7-102(1)(a)(i), MCA (1995), defining threats in official matters, speaks to a threat made for the purpose of influencing an þexercise of discretionþ by a public servant; it does not speak to a þdiscretionary function.þ  Therefore, the fact that service of process is a statutory duty under õ 7-32-2121 (9), MCA (1995), rather than a þdiscretionary function,þ does not relate to the issue of whether service of process involves an exercise of discretion under õ 45-7-102(1)(a)(i), MCA (1995).

We have defined discretion as involving þthe power of choice among several courses of action, each of which is considered permissible.þ Sourdough v. Board of County Comþrs (1992), 253 Mont. 325, 327, 833 P.2d 207, 208 (citation omitted). As a result, if service of process involves þthe power of choice among several courses of action,þ then service of process by the sheriffþs deputies involves an exercise of discretion which can serve as the basis for a charge of threats in official matters.

Rule 4D, M.R.Civ.P., governs service of process in Montana. In the case of personal service within the state, it simply requires that the person, or that personþs designated agent, be personally served by delivery of a copy of the summons and complaint. Rule 4D(2)(a), M.R.Civ.P. The Rule neither requires nor prohibits service at any particular time or place. Under Rule 4D, then, deputies generally can accomplish personal service of process wherever and whenever the person to be served can be found.

Indeed, the record in this case reflects that the Sheriffþs Department uses a variety of discretionary methods of serving process. On some occasions, the person to be served is asked to come in and pick up the process; alternatively, deputies may serve the person at the personþs residence or some other location. Deputy Shamley testified that he had served process on Keating outside the courtroom, rather than at his residence, on a previous occasion. He also testified that a dangerous situation could cause him to decide not to serve civil process at a personþs residence at all. Finally, he testified that he took Keatingþs threat seriously in this case and, as a result, directed that a minimum of two officers be present when efforts were made to serve civil process on Keating.

Based on the requirements of Rule 4D, M.R.Civ.P., and Deputy Shamleyþs testimony that discretion is exercised in determining where and when process will be served, it is clear that service of process involves the power of choice among several courses of action. On that basis, we conclude that service of process involves an þexercise of discretionþ under õ 45-7-102(1)(a)(i), MCA (1995).

Keatingþs final argument is that the State did not establish that his threat that law enforcement officers coming on to his property þmay be killedþ was made for the purpose of influencing an exercise of discretion. He contends, in this regard, that he did not know the deputies were at his residence on the evening of November 22, 1995, to serve him with process, so his telephone threat later that evening was not an attempt to influence how that service was accomplished.

Deputy Peterson testified, however, that he told Keating he þhad some papers to serve on him.þ Deputy Shamley corroborated that testimony by testifying that he heard

Deputy Peterson so advise Keating.  According to Deputy Peterson, Keating started yelling when told the purpose of the deputiesþ visit, telling Deputy Peterson he was trespassing and must leave.  The deputies left without accomplishing service of process and Keating made his telephone threat shortly thereafter.  Moreover, Keating himself testified that, if he knew civil papers were to be served on him and the Sheriffþs Department called him, he would go to the Sheriffþs Department to pick them up.  The evidence regarding Keatingþs awareness of the deputiesþ reason for being at his residence, his insistence that he would pick up any papers to be served on him at the Sheriffþs Department, and his threat after the deputies attempted to serve him with process was sufficient to permit the jury to infer that Keating purposely or knowingly threatened the deputies with the purpose to influence their exercise of discretion regarding where and when to accomplish service of process on him.

We conclude that, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense of threats in official matters beyond a reasonable doubt.  We hold, therefore, that the District Court did not abuse its discretion in denying Keatingþs motion for a directed verdict.

Affirmed.

/S/  KARLA M. GRAY

We concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  WILLIAM E. HUNT, SR.