No. 97-264

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

VALENTINE DEAVILA, JR.,

Defendant and Appellant.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Big Horn,
                Honorable Maurice R. Colberg, Jr., Judge Presiding.


COUNSEL OF RECORD:

For Appellant:

James L. Vogel, Hardin, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Patricia J. Jordan,
Assistant Attorney General, Helena

Christine A. Cooke, County Attorney; Curtis Bevolden, Deputy County
Attorney, Hardin, Montana



Submitted on Briefs: November 13, 1997

Decided: December 9, 1997

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Valentine Deavila, Jr., appeals from the order of the Thirteenth Judicial District Court, Big Horn County, denying his motion to dismiss for lack of speedy trial. We affirm.

Deavila raises the following issue on appeal:

Did the District Court err when it denied Deavila's motion to dismiss for lack of speedy trial?

BACKGROUND

On December 7, 1995, Deavila was arrested and subsequently charged by information filed on December 12, 1995, with criminal endangerment and solicitation to commit robbery. After being incarcerated for thirteen days, Deavila was released on a property bond. The District Court initially set trial for March 26, 1996, but due to other scheduled cases, trial did not occur that day and was reset for June 17, 1996. Again, because of a crowded court docket, the June 17 trial was postponed. The court next set trial for October 15, 1996.

On September 20, 1996, Deavila moved to dismiss the charges for lack of speedy trial. He filed an affidavit in support of his motion on October 10, 1996. Following a hearing in which Deavila and his wife Ronette testified, the District Court issued oral findings and conclusions denying Deavila's motion to dismiss.

On October 15, 1996, Deavila entered into a plea bargain with the State wherein he agreed to plead guilty to criminal endangerment while reserving his right to appeal the denial of his motion to dismiss. In return, the State dismissed the solicitation charge. The District Court accepted the plea bargain and sentenced Deavila to five years, with all time suspended.

DISCUSSION

Did the District Court err when it denied Deavila's motion to dismiss for lack of speedy trial?

A speedy trial claim is a question of constitutional law, and we review questions of law de novo to determine whether the court's interpretation of the law is correct. State v. Small (1996), 279 Mont. 113, 116, 926 P.2d 1376, 1378.

The Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee a criminal defendant the right to a speedy

trial.

To determine whether a defendant's right to a speedy trial has been violated, this Court has adopted the four-part test set forth in Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117. See State ex rel. Briceno v. Dist. Ct. of 13th Jud. Dist. (1977), 173 Mont. 516, 518, 568 P.2d 162, 163-64.

The Barker test centers on four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defense. State v. Collier (1996), 277 Mont. 46, 54, 919 P.2d 376, 381-82. All four factors are weighed by considering the facts and circumstances of each case; no one factor is determinative. Collier, 919 P.2d at 382.

A defendant's right to a speedy trial attaches either at the time the defendant is arrested, at the time of the filing of the complaint or information, or at the time of indictment. State v. Larson (1981), 191 Mont. 257, 261-62, 623 P.2d 954, 957-58. A delay of over 200 days is presumptively prejudicial and will usually trigger further analysis of the remaining speedy trial factors. Collier, 919 P.2d at 382. If a delay is presumptively prejudicial, the burden shifts to the State to provide a reasonable explanation for the delay and to show that the defendant was not prejudiced by the delay. Collier, 919 P.2d at 382. In the instant case, the 313-day delay between Deavila's December 7, 1995, arrest and scheduled October 15, 1996, trial date is sufficient, as the State concedes, to require consideration of the remaining Barker factors.

The second factor, reason for the delay, requires this Court to allocate portions of the overall delay to the party responsible for causing it. Collier, 919 P.2d at 382. Here, the District Court attributed the delay to the State as institutional due to calendaring problems of the court. Institutional delay is most often caused by crowded court dockets and the corresponding difficulties in setting trial dates. Small, 926 P.2d at 1379. Although institutional delay is charged against the State, it weighs less heavily than intentional delay. State v. Williams-Rusch (1996), 279 Mont. 437, 450, 928 P.2d 169, 177. In this case, while the entire delay is chargeable to the State, the State has provided a reasonable explanation for the delay by establishing that it was institutional, not intentional. See State v. Tweedy (1996), 277 Mont. 313, 321, 922 P.2d 1134, 1138. We conclude the reason for the delay does not weigh heavily against the State.

The third Barker factor requires a defendant to timely assert his right to a speedy trial. State v. Matthews (1995), 271 Mont. 24, 30, 894 P.2d 285, 288. If a defendant

moves to dismiss before trial, the defendant has fulfilled the requirement of asserting his constitutional right to a speedy trial.  Tweedy, 922 P.2d at 1139.

Deavila moved to dismiss on September 20, 1996, twenty-five days before the scheduled trial.  His motion was timely filed.  However, a defendant's technical compliance with the assertion of his speedy trial right does not end the discussion of the third Barker factor.  The Barker test requires a balancing of the speedy trial factors in light of the surrounding facts and circumstances.  Williams-Rusch, 928 P.2d at 176.

Deavila could have objected shortly after June 17, 1996, when his trial was rescheduled for a second time.  By then, speedy trial implications would have arisen because nearly 200 days had elapsed since Deavila's arrest on December 7, 1995.  This factor is not determinative, however, because Deavila's motion was technically timely, and it is necessary to complete the balancing process by considering the final Barker factor.

The fourth Barker factor, prejudice to the defendant, is analyzed by assessing three interests which the speedy trial right was designed to protect: preventing oppressive pretrial incarceration; minimizing the defendant's anxiety and concern; and avoiding impairment of the defense.  The final of these factors is the most critical.  Matthews, 894 P.2d at 288.  Except for thirteen days after his arrest, Deavila was released on bond.  We conclude that Deavila was not subjected to oppressive or prejudicial pretrial incarceration.

Deavila claims prejudice because he lost his car which was being held by the Big Horn County Sheriffþs Office.  He also claims prejudice because the Montana Department of Family Services (DFS) denied him increased visitation of his two minor children and instituted proceedings to terminate his parental rights.  Deavila argues he was denied employment because of the pending charges.  Finally, he asserts that he suffered substantial stress.

The evidence presented before the District Court does not support Deavila's claims.  According to Ronette, the Sheriff's Office notified her that she could pick up Deavila's car.  Nobody claimed the vehicle, and it was sold.  Deavila's car was not lost due to delay.  DFS removed the Deavilas' children from their custody in August 1995, four months before the State charged Deavila with criminal endangerment and solicitation.  The DFS actions  occurred for reasons unrelated to the charges in this case.  Likewise, Deavila has made no claim of lost employment opportunities between July 1996 and his scheduled trial date.  We are unpersuaded that trial delay resulted in a loss of Deavila's employment opportunities.

We have recognized that a certain amount of anxiety and concern is inherent in being charged with a criminal offense.  State v. Weeks (1995), 270 Mont. 63, 73, 891

P.2d 477, 483. We have also indicated that the anxiety and concern to be considered under the Barker test is that which was "aggravated as a result of the delay." Williams-Rusch, 928 P.2d at 178. "[S]ince it is nearly impossible for the State to prove that anxiety and concern do not exist, the State's burden to show a lack of anxiety becomes considerably lighter in the absence of more than marginal evidence of anxiety." Williams-Rusch, 928 P.2d at 178. The evidence does not support Deavila's claims that he suffered excessive anxiety and concern as the result of pretrial delay.

Finally, we consider the most critical of the prejudice-related interests the speedy trial right was designed to protect: whether Deavila's defense was impaired by the delay. See Matthews, 894 P.2d at 288. Once the delay has been determined to be presumptively prejudicial, the State has the burden of rebutting the presumption of prejudice. However, contrary to Deavila's argument that the State must present evidence to rebut the presumption of prejudice, this does not mean "the State has the burden of coming forward first." State v. Keating (Mont. Nov. 25, 1997), Cause No. 97-065. "[A] defendant must ordinarily come forward with some evidence that the defense was impaired--that is, prejudiced--as a result of the delay." Keating, Slip Op. at 13. Therefore, we consider the evidence Deavila presented in support of his claim that his defense was impaired by the pretrial delay.

Deavila claims the delay prevented him from finding several witnesses who could have testified on his behalf. Deavila's counsel admitted he did not attempt to subpoena or interview the witnesses before the previously scheduled March and June trials. Absent such an attempt, we cannot agree that the additional delay between June and October resulted in an impaired defense. Based on the evidence presented by Deavila, we conclude that Deavila's defense was not impaired by the delay.

Although the length of the delay and the reason for the delay weigh against the State, Deavila's delay in asserting his right demonstrates his lack of an actual interest in moving his case to trial. Deavila did not establish oppressive pretrial incarceration or excessive anxiety and concern resulting from the delay. Nor did he demonstrate actual impairment to his defense.

After considering the four Barker factors, we conclude that Deavila's right to a speedy trial has not been violated. We hold that the District Court did not err in denying Deavila's motion to dismiss for lack of a speedy trial.

Affirmed.

/S/ J. A. TURNAGE

We concur:

/S/  KARLA M. GRAY
/S/  WILLIAM E. HUNT, SR.
/S/  W. WILLIAM LEAPHART
/S/  JIM REGNIER