No. 84-19

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

        Plaintiff and Respondent,

   vs.

BILL E. BRITTON,

        Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District
           In and for the County of Lake
           Honorable Jack L. Green, Judge presiding.

Counsel of Record:

   For Appellant:

        Milodragovich, Dale & Dye; Karl H. Boehm, Missoula,
        Montana

   For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        John Frederick, County Attorney, Polson, Montana

---

Submitted on Briefs: May 17, 1984

Decided: October 31, 1984

Filed: OCT 3 1 1984

*Ethel M. Harrison*

---
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant Bill E. Britton appeals a conviction by jury trial in the Lake County District Court, for felony theft. The sole issue is whether the trial court erred in denying Britton's motion to dismiss for lack of a speedy trial. Defendant was charged on July 1, 1982, and was tried on August 1, 1983, 396 days after the complaint was filed and the arrest warrant was issued. By application of the speedy-trial criteria, we hold defendant was denied his constitutional right to a speedy trial because the State failed to explain the delay and to show an absence of prejudice to the defendant.

Almost a six-month lapse occurred between the filing of the complaint in Justice Court (July 1, 1982) and the filing of an information in District Court (December 29, 1982). Britton was scheduled to appear in Justice Court on July 8, but his appearance was continued so he could obtain counsel and seek medical attention in Spokane. Nothing else happened. On December 29, 1982, the trial court granted the State leave to file an information in District Court and an arraignment was set for January 12, 1983. The State explains this six-month delay by contending Britton asked for the July 8 continuance, and that the State was later involved in two other criminal trials in November and December, 1982.

At the January 12, 1983 arraignment in District Court, Britton suffered heart failure, and so he was not officially arraigned until March 9, 1983. At the March 9 arraignment, the trial court set the omnibus hearing for June 15, 1983, and at this hearing defendant first moved to dismiss for lack of a speedy trial. The trial court denied this motion and

again denied the motion just before the trial started on August 1, 1983. We are asked to determine whether defendant was denied a speedy trial because of the time lapse between his original appearance in Justice Court and the time of trial--a period of 396 days.

Defendant has both a federal and state constitutional right to a speedy trial, but we decide the prejudice question based on our own Constitution, Mont. Const., Art. II, § 24. We use the same four factors as adopted by the United States Supreme Court in Barker v. Wingo (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, in interpreting our own constitution, but we choose to give our own meaning to them rather than to rely on interpretations given these four factors by the United States Supreme Court. This Court of course must give only that meaning to United States Consitutional provisions that the United States Supreme Court has chosen to give. But at the same time this Court is free to interpret our own Constitution as protecting even more strongly the fundamental rights of our citizens.

The factors we consider in applying the speedy trial provision of Mont. Const. Art. II, § 24, are: (1) length of delay, (2) the reason for delay, (3) whether defendant asserted the right, and (4) whether defendant was prejudiced. No individual factor is indispensable or dispositive.

Length and Reason for the Delay:

The 396-day delay consists of three time periods: July 1, 1982 to January 12, 1983, the time between filing of the complaint in Justice Court and the first arraignment in District Court; January 12, 1983 to March 9, 1983, the time elapsing before defendant was actually arraigned after he had a heart attack on January 12th; and March 9, 1983 to August

- 3 -

1, 1983, the time between arraignment and the actual start of trial.

The State contends the first time period--July 1, 1982 to January 12, 1983, is attributable to defendant. The State contends defendant failed to contact the court after he returned from Spokane, and the State also contends its resources were involved in two other criminal matters.

The reason defendant appeared without counsel on July 8, is because he happened to be in the courthouse on that date on an unrelated civil matter and he was arrested there and immediately taken before the Justice Court. Defendant also testified that after the July 8 continuance, he understood he was to report to the sheriff's office when he returned from Spokane, and that he did so. The State contends he did not. When asked whether Britton had contacted his office after returning, the sheriff testified:

> ". . . I can't be sure. He could have. If he did, my response would have been to contact the court. I don't recall anything in court being said that he was to notify me when he got back . . ."

Defendant's testimony that he contacted the sheriff's office was uncontradicted, and the sheriff's testimony does not refute this testimony. At most, it is equivocal.

The State contends the case had been continued for only four days, until July 16, 1982, but nothing in the record establishes this assertion. In any event, nothing took place on July 16, 1982, and the record establishes that the State did nothing more to prosecute the defendant other than to file the information in District Court on December 29, 1982, almost six months after the complaint was filed.

Finally, the State seeks to excuse the delay because the prosecutor's office and the sheriff's office were tied up in

- 4 -

two criminal trials that consumed all the resources and time of those offices. However, the record does not establish this fact, and the two trials did not take place until November and December.

Of the 195 days between July 1, 1982 and January 12, 1983, approximately 14 are attributable to Britton, and 181 are attributable to the State.

The State then argues that the time between January 12, 1983 and March 9, 1983, is solely attributable to the defendant because he suffered a heart attack at the January 12 arraignment and required hospitalization. However, defendant's attorney, after consultation with doctors, told the court that defendant would be available for arraignment in one to two weeks. Nonetheless, the State did nothing about the arraignment until February 23, when it obtained an order setting the arraignment for March 9, 1983, almost two months after the defendant's heart attack.

Although the January 12 arraignment had to be postponed because of defendant's heart attack, the State could have been more diligent in getting the arraignment rescheduled. Defendant could have been arraigned as early as January 20, but instead the arraignment was continued without date and did not take place until March 9. The State gives no reason for the delay other than defendant's heart attack, yet the evidence shows that defendant was available for arraignment at least by January 20th. Of the 56-day delay between January 12, 1983 and March 9, 1983, no more than 14 days are attributable to the defendant and at least 42 days are attributable to the State.

The State also blames defendant for the delay between March 9, 1983 and the actual start of trial on August 1,

1983, although it does so in a circuitous manner. Because the State blames defendant for causing the delay until March, the State argues defendant is therefore responsible for any further delay flowing from the March 9 arraignment. At the March 9 arraignment, the trial was set for the next jury term, which was the July jury term, and the State argues defendant caused this delay. But the State is the party which failed to take action after the postponement of the January 9 arraignment due to defendant's heart attack.

With no support in the record the State further argues defendant had civil matters pending also and argues he did not want the criminal case to go to trial until the civil matters were tried during the spring of 1983. But the record does not support a conclusion that defendant deliberately delayed the criminal proceedings. When defendant was questioned at the hearing on his motion to dismiss, he denied that he intended any such delay, and no evidence exists to support such contention. Furthermore, defendant would not have been faced with the dilemma of a criminal case and civil case being tried to the same jury panel. The State should have been diligent in getting the case filed in District Court and tried in District Court during the fall 1982 jury term. Instead, the State let the case linger in Justice Court.

Of the 145-day delay between March 9 and August 1, most, if not all is attributable to the State as "institutional delay." This, when combined with the other two periods, makes the State responsible for approximately 360-368 days of the delay. Much of this delay was institutional delay, but delay nonetheless, and substantial delay at that. It was

therefore the State's burden to show defendant was not prejudiced by the delay, and the State failed in that burden.

Assertion of the Right to Speedy Trial:

Our rule is that if a defendant has moved to dismiss before trial, he has fulfilled the requirement of asserting his constitutional right to a speedy trial. State v. Bailey (Mont. 1982), 655 P.2d 494, 498. The trial court, on the other hand, held defendant was tardy in asserting his right to a speedy trial by first raising it at the omnibus hearing on June 15, 1983, more than eleven months after the complaint had first been filed in Justice Court. The trial court did not indicate when that magic time was, but simply ruled that defendant's motion was too late. However, delay of assertion of the right to speedy trial is not measured simply by measuring the lapse of time from the time of the charge until the time the motion is made. Rather, the sole inquiry is whether defendant has moved before trial to dismiss on the ground that he has been denied a speedy trial. The United States Supreme Court stated in Barker v. Wingo, supra, that "[t]here is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial." 407 U.S. at 521. We adopt this same position when interpreting our own Constitution. In holding that the defendant in effect waived his right to assert his right to a speedy trial because his motion at the omnibus hearing came too late, the trial court was clearly wrong.

Whether the Delay has Caused Actual Prejudice:

The trial court also determined defendant had not been prejudiced by the delay "in any significant way." The court concluded defendant had been released on his own recognizance

after his first appearance in Justice Court and any anxiety and concern he had over the pending criminal charges was no greater than the anxiety and concern he was experiencing because of several pending civil cases. We cannot so view the defendant's anxiety. Anxiety over potential loss of liberty because of a criminal conviction is certainly of greater concern in the normal case than that of losing property or being forced to pay money as a result of a civil proceeding. The criminal charge was pending for over a year, and at least 50% of the defendant's anxiety and concern could be attributed to the unresolved charge. However the trial court may have viewed this anxiety and concern, we view it as "significant."

In State v. Larson (Mont. 1981), 623 P.2d 954, 38 St.Rep. 213, we held that another factor to consider is whether the defense has been impaired. Delay is not always beneficial to the defendant and detrimental to the State. Delay of a trial may result in defense witnesses becoming unavailable or their memories fading. And one charged with a felony, even though he may not be in jail awaiting trial, may find it difficult or even impossible to maintain or find meaningful employment while the charges are pending.

Here it was the State's burden to rebut the presumption of prejudice caused by the 396-day delay. The State has not sufficiently done so, and we therefore conclude the delay has resulted in prejudice to the defendant. The State should have been aware it was treading dangerously close to an unconstitutional delay. The most glaring neglect is from July 8, 1982 to January 12, 1983, the period between arrest and arraignment. Even assuming defendant did not contact the sheriff on his return from Spokane in July of 1982, it is

nonetheless clear defendant had no duty to prosecute himself and the State had the burden to proceed in a manner that would protect his constitutional right to a speedy trial. The State did not do so, and the delay continued with the State giving no constitutionally acceptable explanation for the substantial delay.

We reverse and remand with instructions to dismiss all charges against the defendant.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices