No. 95-580

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

WILLIAM H. TWEEDY,

      Defendant and Appellant.

FILED

JUL 23 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Ninth Judicial District,
               In and for the County of Glacier,
               The Honorable Marc Buyske, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        William H. Tweedy, Pro Se, Cut Bank, Montana

      For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        Barbara C. Harris, Ass't Attorney General,
        Helena, Montana

        Larry D. Epstein, Glacier County Attorney,
        Cut Bank, Montana

Submitted on Briefs:  May 23, 1996

Decided:  July 23, 1996

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

William H. Tweedy (Tweedy) appeals from an order of the Ninth Judicial District Court, Glacier County, dismissing his appeal from a Justice Court conviction. We reverse and remand with instructions.

The issues on appeal are:

1. Did the District Court have jurisdiction over Tweedy's appeal from the Justice Court?

2. Did the District Court err in granting the State of Montana's motion to dismiss Tweedy's appeal?

3. Was Tweedy's right to a speedy trial violated?

On January 3, 1989, the State of Montana (State) charged Tweedy in Glacier County Justice Court with two counts of misdemeanor assault. On April 11, 1989, a jury found Tweedy not guilty on the first count, and guilty on the second count, of misdemeanor assault. The Justice Court scheduled sentencing for April 18, 1989, and Tweedy filed a notice of appeal to the District Court on April 19, 1989. The Justice Court filed its sentencing order on May 3, 1989.

The District Court scheduled Tweedy's trial for July 21, 1989. Tweedy subsequently requested, and received, a continuance of that trial date. No new trial date was ever scheduled. In April of 1990, Tweedy filed a letter requesting that his name be substituted for that of his previous counsel as attorney of record.

Nothing further occurred in the case until January 13, 1995, when the State moved to dismiss the appeal on the basis that Tweedy had failed to diligently pursue it. Tweedy responded with a motion

to dismiss the underlying charge for lack of speedy trial and prosecutorial prejudice. The District Court held a hearing on the motions and, thereafter, granted the State's motion to dismiss Tweedy's appeal. Tweedy appeals.

1. Did the District Court have jurisdiction over Tweedy's appeal from the Justice Court?

On appeal, Tweedy argues that the District Court erred in dismissing his appeal from the Justice Court and in implicitly denying his motion to dismiss the charge against him on speedy trial grounds and other bases. In addition to responding to Tweedy's arguments, the State contends that the District Court did not acquire jurisdiction over Tweedy's appeal because his notice of appeal from the Justice Court was premature.

The issue of subject matter jurisdiction may be raised by a party, or by the court itself, at any stage of a judicial proceeding. In re Marriage of Miller (1993), 259 Mont. 424, 426, 856 P.2d 1378, 1380. Moreover, a party cannot consent to subject matter jurisdiction which is lacking or waive the want of jurisdiction. State v. Hegeman (1991), 248 Mont. 49, 52, 808 P.2d 509, 511. Thus, notwithstanding the State's failure to raise it in the District Court, the issue of whether the District Court had jurisdiction over Tweedy's appeal from the Justice Court is properly before us.

The manner in which an appeal from a justice court to a district court must be taken is controlled by statute in Montana and recently has been clarified by this Court. Pursuant to § 46-17-311(2), MCA, a defendant initiates an appeal to the district

3

court by filing written notice of intention to appeal within 10 days after a justice court judgment is rendered. A judgment on a criminal conviction includes the sentence; therefore, the imposition of sentence and final judgment by the justice court is a prerequisite for an appeal from that court to the district court. State v. Todd (1993), 262 Mont. 108, 111, 863 P.2d 423, 425 (citations omitted). A notice of appeal filed after a conviction, but before the justice court imposes sentence and final judgment, is premature and does not divest the justice court of jurisdiction over the case; conversely, a district court does not obtain subject matter jurisdiction until a justice court has imposed sentence and final judgment. Todd, 863 P.2d at 425 (citation omitted).

Here, Tweedy filed his notice of appeal after the April 11, 1989, jury verdict finding him guilty of misdemeanor assault, but before the Justice Court filed its sentencing order on May 3, 1989. Tweedy asserts, however, that the Justice Court orally pronounced sentence on April 18, 1989, in the presence of himself and his attorney, that the judgment against him was final on that date and that his attorney prepared the notice of appeal later that day. On the basis of these assertions, Tweedy contends that he timely filed his notice of appeal on April 19, 1989, and the District Court acquired jurisdiction.

We previously have held that the statutory 10-day period for filing a notice of appeal runs from the date on which a justice court orally renders judgment in open court, regardless of whether a written judgment is issued. State v. Mortenson (1978), 175 Mont. 403, 404-405, 574 P.2d 581, 582. In Mortenson, the record

4

apparently reflected that the sentence and judgment were, in fact, orally pronounced in open court. Mortenson, 574 P.2d at 581.

The record in the present case, insofar as it is relevant to this issue, consists of a jury verdict finding Tweedy guilty of one count of misdemeanor assault on April 11, 1989; a Justice Court notice requesting Tweedy to appear on April 18, 1989, for sentencing; Tweedy's notice of appeal, dated April 18, 1989, and filed on April 19, 1989; and the Justice Court's sentencing order on Tweedy's misdemeanor assault conviction, filed on May 3, 1989.

Although the sentencing order does not refer to any sentencing proceeding or oral pronouncement of sentence having occurred on April 18, 1989, there also is no indication in the record that Tweedy did not appear, as ordered, for sentencing in the Justice Court on that date. Thus, while the record is not altogether clear in this regard, the order to appear for sentencing on April 18, 1989, taken together with Tweedy's notice of appeal dated the same day and filed on April 19, 1989, creates a strong inference that the Justice Court orally pronounced sentence on April 18, 1989, in accordance with its scheduling order and that the May 3, 1989, sentencing order was merely a written formalization of its earlier oral sentence. As a result, judgment was rendered on April 18, 1989, and Tweedy's notice of appeal to the District Court was timely filed within the statutory 10-day period. We conclude, therefore, that the District Court had subject matter jurisdiction over Tweedy's appeal from the Justice Court.

We note that, in 1991, the legislature enacted § 46-18-116, MCA, which provides as follows:

> The judgment must set forth the plea, verdict or finding, and the adjudication. If the defendant is convicted, it must set forth the sentence or other disposition. The judgment must be signed and entered on the record.

Although this statute is not located in Chapter 17 of Title 46, which specifically governs criminal procedure in justice and city courts, it is applicable to criminal proceedings in all the courts of Montana "except where provision for a different procedure is specifically provided by law." Section 46-1-103(1), MCA. Neither the legislature nor this Court has provided such a different procedure for justice courts and, therefore, § 46-18-116, MCA, is applicable to criminal proceedings in justice courts. While the § 46-18-116, MCA, requirement for a signed judgment entered on the record does not apply here because Tweedy's Justice Court conviction occurred in 1989, compliance with this requirement by Montana courts should eliminate confusion in the future regarding when the statutory time periods for appeal from judgments in criminal cases begin to run.

2. Did the District Court err in granting the State's motion to dismiss Tweedy's appeal?

The State argued in the District Court that Tweedy's appeal from the Justice Court conviction and judgment should be dismissed based on his failure to pursue it in a timely manner. The State did not file a brief in support of its motion and did not provide the District Court with authority for its position at the hearing on both parties' motions.

The District Court's order granting the State's motion to dismiss Tweedy's appeal notes only that Tweedy made no effort to pursue his appeal from the April 1990, point at which he

6

substituted himself as counsel of record until the State filed its motion to dismiss the appeal in January of 1995. The order provides no further rationale and contains no citation to authority. The court stated at the hearing that, as the party bringing the appeal, Tweedy was obligated to ensure that the appeal was heard in a timely fashion and that the State did not have the burden to pursue the appeal. The District Court order granting the State's motion to dismiss the appeal did not directly address Tweedy's motion to dismiss the underlying charge for lack of speedy trial on appeal.

Section 25-33-304, MCA, authorizes the dismissal of a civil appeal from a justice court to a district court for failure to prosecute or unnecessary delay. No statutory authority for such a dismissal of a criminal appeal exists, however, and this Court has not specifically addressed the issue of whether the defendant or the prosecution has the responsibility to timely pursue the prosecution of a criminal appeal from a justice court to a district court. The State contends that such responsibility lies with the party bringing the appeal.

The right of a criminal defendant to a speedy trial is guaranteed by both the Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution. State v. Matthews (1995), 271 Mont. 24, 27, 894 P.2d 285, 287. As a general rule, it is the State's duty to ensure that a criminal case is diligently prosecuted; the defendant has no duty to bring himself to trial. State v. Tiedemann (1978), 178 Mont. 394, 400, 584 P.2d 1284, 1288.

7

It is clear that a criminal defendant has the initial burden, pursuant to § 46-17-311, MCA, to perfect his or her appeal from a justice court in order to vest jurisdiction in the district court. Once that appeal is perfected, the criminal defendant is entitled to a trial de novo in the district court pursuant to § 46-17-311(1), MCA. Thus, when the appeal reaches the district court, it proceeds as if it were a new trial. State v. Sunford (1990), 244 Mont. 411, 416, 796 P.2d 1084, 1087. Moreover, we have held that, once either party appeals a criminal action from a justice court to a district court, speedy trial issues are analyzed under the four-part test established in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. State v. Bullock (1995), 272 Mont. 361, 368-69, 901 P.2d 61, 66; Sunford, 796 P.2d at 1087.

While our cases have not specifically addressed the precise issue presently before us, they clearly mandate our conclusion that the burden is on the State to diligently prosecute a criminal case which is in the district court as the result of an appeal from a justice court, without regard to which party brought the appeal. To conclude otherwise would require us to ignore the de novo nature of such a proceeding under both § 46-17-311, MCA, and Sunford and to place the burden of prosecuting a criminal case on the defendant in contravention of Tiedemann. Indeed, to conclude otherwise would penalize a criminal defendant exercising the statutory right to appeal to the district court by effectively nullifying the constitutional guarantee of a speedy trial.

In addition, the situation at issue here is not dissimilar from that which occasionally results from an appeal to this Court.

When a criminal defendant appeals to this Court and is granted a new trial, the State is required on remand to proceed with the new trial in a diligent and speedy manner. See, e.g., State v. Stewart (1994), 266 Mont. 525, 881 P.2d 629. A defendant exercising the statutory right to appeal **from** a justice court to the district court is entitled to the same treatment. The State retains the obligation to ensure that the trial de novo in the district court progresses in a manner which does not violate the defendant's right to a speedy trial and, under Bullock, any speedy trial issues which arise after the appeal has been perfected are analyzed under the four-part Barker test. See Bullock, 901 P.2d at 66.

The State cites to City of Seattle v. Crockett (Wash. 1976), 551 P.2d 740, in support of its assertion that when a defendant appeals a justice court conviction, the burden to pursue that appeal rests with the defendant. In Crockett, the Washington Supreme Court recognized that a defendant retains a constitutionally protected right to a speedy trial in a trial de novo, but held that when the defendant is the party bringing the appeal in district court, he or she bears the burden of diligently prosecuting the appeal to protect that right to a speedy trial. Crockett, 551 P.2d at 743.

We decline to adopt the State's position, based on Crockett, that a criminal defendant must pursue his or her own prosecution in a trial de novo before a district court. In our view, a defendant who retains the constitutional right to a speedy trial after appealing a justice court conviction to the district court must also retain the corresponding right to require the prosecution to

9

ensure that a speedy trial occurs. We observe, in this regard, that other jurisdictions have held that a defendant is not under any obligation to act affirmatively to protect the right to a speedy trial in a trial de novo. See, e.g., City of Elkhart v. Bollacker (Kan. 1988), 757 P.2d 311, 314; and Hicks v. People (Colo. 1961), 364 P.2d 877, 879-80.

The State also relies on State v. Langdon (Idaho App. 1990), 785 P.2d 679, in support of its argument, but Lansdon is inapplicable to the issue before us. There, the defendant's appeal from a magistrate court to the district court was dismissed because he failed to file a brief in support of his appeal within the allotted time; the Idaho Court of Appeals determined that dismissal could be an appropriate discretionary sanction under the applicable procedural rule for failure to file a timely brief. Langdon, 785 P.2d at 680-81. In the present case, Tweedy owed no brief or other act pursuant to rule or statute.

We conclude that, once a defendant has perfected an appeal from the justice court to the district court, the State has the obligation to ensure that the prosecution of the case proceeds in a diligent manner. We hold, therefore, that the District Court erred in granting the State's motion to dismiss Tweedy's appeal on the basis that Tweedy failed to pursue it.

3. Was Tweedy's right to a speedy trial violated?

An analysis of whether a defendant's right to a speedy trial has been violated requires a balancing of the following four factors:

1)   length of the delay;

10

2) reason for the delay;

3) assertion of the right by the defendant; and

4) prejudice to the defendant.

Matthews, a94 P.2d at 287. No single factor is indispensable or dispositive. State v. Britton (1984), 213 Mont. 155, 158, 689 P.2d 1256, 1258. The first factor, the length of the delay, acts as a triggering mechanism; the length of the delay must be presumptively prejudicial before the remaining three factors will be analyzed. Matthews, 894 P.2d at 287 (citation omitted). The State concedes that the delay in this case, a period of approximately six years, is presumptively prejudicial.

When the delay is presumptively prejudicial, the burden shifts to the State to rebut the presumption by showing a reasonable explanation for the delay and demonstrating that the defendant was not prejudiced by the delay. Matthews, 894 P.2d at 287. The State argues that the reason for the delay after the original July 21, 1989, trial date had been vacated was Tweedy's failure to prosecute his appeal; on that basis, it contends that the entire period must be allocated to Tweedy. We concluded above, however, that it was the State's duty to diligently prosecute the case. Thus, except for the relatively brief period before and after Tweedy's motion to continue the original trial date, which is attributable to Tweedy, we charge the delay in excess of five years to the State.

We also must weigh the **time** chargeable to the State. Matthews, 894 P.2d at 287. Speedy trial issues often involve delay caused by crowded court dockets and corresponding difficulties in setting trial dates, which is commonly referred to as institutional

11

delay: we weigh that type of institutional delay less heavily against the State than intentional delay. See State v. Weeks (1995), 270 Mont. 63, 72, 891 P.2d 477, 482. The delay in this case was not of that type.

Nor was the delay intentional. Rather, it was caused by the State's erroneous conclusion that it did not have the burden to diligently prosecute Tweedy's trial de novo and its total failure to pursue the case from July of 1989 until its motion to dismiss the appeal in January of 1995. We noted above that we have not heretofore specifically addressed the precise issue of which party has the burden of diligently pursuing a criminal appeal from a justice court to a district court for a trial de novo; we also indicated, however, that Tiedemann, Sunford, and Bullock clearly mandated our conclusion here that the burden remained on the State to timely prosecute. Thus, Montana case law did not provide a reasonable basis for the State's position on the burden issue. As a result, we weigh the delay of more than five years in this case heavily against the State.

The third Barker factor requires that a defendant assert the right to a speedy trial. "Our rule is that if a defendant has moved to dismiss before trial, he has fulfilled the requirement of asserting his constitutional right to a speedy trial." Britton, 689 P.2d at 1260. Here, Tweedy moved to dismiss for lack of speedy trial before his trial was ever rescheduled after the first continuance. Thus, he fulfilled the requirement that he assert his constitutional right.

The State argues, in this regard, that even if it and the

12

District Court had some responsibility to reset Tweedy's case for trial, that responsibility should be weighed against Tweedy's "lack of assertion" of the right to speedy trial; in that event, according to the State, this Court "must decide whether the cause of the delay was completely attributable to the State or to a waiver of the right of speedy trial by the Defendant." With regard to the alleged "lack of assertion" of the right, that contention is factually incorrect; indeed, the State recognizes at another portion of its brief that Tweedy asserted his right on January 17, 1995. With regard to the "waiver" theory, the State cites to no authority under which a defendant's right to a speedy trial is waived--in the legal sense--where asserted prior to trial. As presented here, these arguments by the State are merely a different, and unsupported, twist on its earlier efforts to place the burden of diligently prosecuting this trial de novo on the defendant.

The final factor of the speedy trial analysis is whether the defendant was prejudiced by the delay. Three interests are considered in assessing prejudice resulting from delay: 1) prevention of oppressive pretrial incarceration; 2) minimization of the defendant's anxiety and concern; and 3) avoidance of impairment of the defense. Matthews, 894 P.2d at 288. The avoidance of impairment of the defense is the most critical of these three interests. Matthews, 894 P.2d at 288.

The primary prejudice-related thrust of Tweedy's motion to dismiss for lack of a speedy trial was that witnesses' memories had been impaired by the delay. The State argues that, under Weeks,

13

general claims of impairment are not persuasive, and that "none of the witnesses have passed away and there has been no destruction of the records regarding the charged incident."

It is true that mere self-serving assertions that the defendant suffered prejudice generally are not sufficient to demonstrate impairment of, or prejudice to, the defense. Weeks, 891 P.2d at 484. In Weeks, however, the defendant stated only that "'[t]he defense was impaired by the passage of time.'" Weeks, 891 P.2d at 484. Here, Tweedy's statement that witnesses' memories were impaired by the lengthy delay is at least minimally more specific than the statement in Weeks upon which we based our conclusion.

Moreover, given the presumptively prejudicial delay, the burden shifted to the State in this case to rebut the presumed prejudice. Matthews, 894 P.2d at 287. The State did not respond to Tweedy's motion via either a brief or argument at the hearing. It did not present any evidence, as required by Matthews, to prove that Tweedy was not prejudiced. See Matthews, 894 P.2d at 289.

Nor is the State's assertion on appeal that "none of the witnesses have passed away" material here. First, Tweedy did not assert that witnesses had died; he asserted that witnesses' memories have been impaired due to the long delay. Thus, the State's assertion is not responsive to Tweedy's assertion and, even if true, it would be insufficient to rebut Tweedy's claim. More importantly, the appropriate place to respond to Tweedy's claim of prejudice was in the District Court, not in this Court. The State could, and should, have done so by responding to Tweedy's motion

14

and requesting an evidentiary hearing to rebut his claims. It did not.

We recognize that, in the usual case, a defendant claiming a speedy trial violation would be required to at least submit an affidavit in support of claims of prejudice. Matthews, 894 P.2d at 289. Moreover, even an affidavit containing a general "the defense was impaired" assertion is not sufficient to demonstrate impairment or prejudice to the defense. Weeks 891 P.2d at 484.

Once the burden has shifted to the State to rebut presumed prejudice, however, it is the State's duty to respond to a speedy trial motion and to properly raise, for resolution by the district court, the issues related thereto. Under the well-established principle that we will not consider an issue raised for the first time on appeal, the State acts at its own peril if it fails to do so. See Weeks, 891 P.2d at 491.

In this case, the State failed to raise either its fact-based responses or its legal authority regarding the sufficiency of Tweedy's assertions in the District Court. Thus, on this record, we conclude that the State failed to meet its burden of rebutting the presumed prejudice to the defense as a matter of law. Consequently, we weigh the prejudice factor in Tweedy's favor.

In this case, we conclude that a proper balancing of the four Barker factors pursuant to Matthews requires that we accord the extraordinary length of the delay substantially more weight than any of the other Barker factors and that we weigh it in Tweedy's favor and against the State. The assertion of the right and prejudice factors also weigh in Tweedy's favor, although less

15

heavily.  As a result, we hold that Tweedy's constitutional right to a speedy trial was violated.

We reverse the District Court's order dismissing Tweedy's appeal and remand for entry of an order dismissing the misdemeanor assault charge against him.

_____
                    Justice

We concur:

_____
            Chief Justice

_____

_____

_____
            Justices

16

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

William H. Tweedy
Box 2163
Cut Bank MT  59427-2163


Larry D. Epstein
Glacier County Attorney
Box 428
Cut Bank MT  59427-0428

Hon. Joseph P. Mazurek, Attorney General
Barbara C. Harris, Assistant Attorney General
215 N. Sanders
Helena MT  59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _D. Gallagher_
Deputy