No. 99-089

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 214N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

SHERMAN PAUL HAWKINS,

Defendant and Appellant.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Powell,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Patrick T. Gallagher, Public Defender Project Office, Anaconda, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Cregg W. Coughlin, Assistant Montana Attorney General, Helena, Montana; Christopher G. Miller, Powell County Attorney, Deer Lodge, Montana

Submitted on Briefs: March 2, 2000
Decided: August 10, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Sherman Paul Hawkins (Hawkins) was charged by Information with the offense of escape, a felony, in violation of § 45-7-306, MCA, and the offense of theft, a felony, in violation of § 45-6-301, MCA. Pending trial, Hawkins filed a motion to dismiss the charges based on the alleged denial of a speedy trial. The District Court of the Third Judicial District, Powell County, denied Hawkins' motion to dismiss on speedy trial grounds. From that denial, Hawkins appeals. We affirm.

¶3 The sole issue on appeal is whether the District Court erred in denying Hawkins' speedy trial motion.

## BACKGROUND

¶4 On July 12, 1997, Hawkins was an inmate at the Montana State Prison in Deer Lodge. Hawkins was scheduled to work in the prison carpentry shop on that date. However, at approximately 4:00 p.m., prison officials determined that Hawkins could not be located on the premises. It was subsequently discovered that a hole had been cut in the perimeter fence of the prison and that a 1983 GMC pickup truck belonging to the prison was missing. Prison escape procedures were initiated and, on July 14, 1997, a warrant for the arrest of Hawkins was issued out of the Powell County Justice Court.

¶5 On July 14, 1997, Hawkins was captured at the Holiday Inn in Pocatello, Idaho, and

authorities recovered the missing prison pickup truck from the hotel parking lot. Hawkins was charged with felony escape and felony theft on August 21, 1997. A jury trial was scheduled for May 26, 1998. On April 13, 1998, Hawkins filed a motion to dismiss the charges on the ground that his right to a speedy trial had been violated. Following a hearing, the District Court denied the speedy trial motion on April 29, 1998.

¶6 On May 26, 1998, pursuant to the terms of a plea agreement, Hawkins pleaded guilty to the offense of felony escape and, in return, the State of Montana (the State) agreed to dismiss the felony theft charge. On consent of the State, Hawkins reserved his right to appeal the District Court's denial of his speedy trial motion. Hawkins was sentenced on September 10, 1998, to a term of four years at the Montana State Prison, to run concurrent with the term of imprisonment he is currently serving. Other facts will be set forth as necessary.

## DISCUSSION

¶7 Did the District Court correctly conclude that Hawkins' speedy trial right was not violated?

¶8 The right to a speedy trial is a matter of constitutional law, and we review a trial court's conclusions of law on the speedy trial right to determine if its interpretation of the law is correct. *See* State v. Maier, 1999 MT 51, ¶ 74, 293 Mont. 403, ¶ 74, 977 P.2d 298, ¶ 74; State v. Olmsted, 1998 MT 301, ¶ 27, 292 Mont. 66, ¶ 27, 968 P.2d 1154, ¶ 27.

¶9 This Court evaluates speedy trial claims based on the four-part balancing test established by the United States Supreme Court in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the application of which we recently clarified in City of Billings v. Bruce, 1998 MT 186, 290 Mont. 148, 965 P.2d 866, *as modified by* State v. Hardaway, 1998 MT 224, 290 Mont. 516, 966 P.2d 125. Pursuant to the *Barker* test, there are four factors which must be assessed in reviewing any claim that a speedy trial was denied: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

¶10 Regarding the first *Barker* factor, length of delay, the parties agree that the pre-trial delay between the filing of the charges against Hawkins and the trial date was 316 days. In *Bruce*, we held that a delay of at least 200 days is necessary to "trigger" further speedy

trial analysis. *See Bruce*, ¶ 55 (giving rise to a presumption of prejudice). Since the delay in this case is beyond the 200-day threshold for establishing presumptive prejudice, we determine that further speedy trial analysis is necessary.

¶11 Under the second *Barker* factor, reason for delay, we allocate between the parties the periods of pre-trial delay so as to determine which party bears the burden of proving whether the defendant suffered prejudice. We held in *Bruce* that when 275 days or more of delay are attributable to the State, we indulge a rebuttable presumption of prejudice and shift the burden of proof to the State "to demonstrate that the defendant has not been prejudiced by the delay." *Bruce*, ¶ 56.

¶12 Hawkins asserts that the delay is "solely attributable" to the State. We note that there is no evidence that any of the pre-trial delay in this case was the intentional result of either party. No continuances of the trial date were sought by either Hawkins or the State. Although Hawkins filed several pre-trial motions, any delay caused by those motions appears to have been a function of the court's crowded docket. Indeed, in ruling on Hawkins' speedy trial motion, the District Court did not attribute any of the pre-trial delay to Hawkins.

¶13 Thus, the State concedes that the pre-trial delay in this case was "institutional" in nature and, on that basis, chargeable against it. *See* State v. Tweedy (1996), 277 Mont. 313, 320-21, 922 P.2d 1134, 1138 (stating that trial delay "caused by crowded court dockets and corresponding difficulties in setting trial dates" is "institutional delay" chargeable to the State); *see also* State v. Hembd (1992), 254 Mont. 407, 413, 838 P.2d 412, 416. However, institutional delay weighs less heavily against the State than does "purposeful" delay. State v. Matthews (1995), 271 Mont. 24, 29, 894 P.2d 285, 287; State v. Weeks (1995), 270 Mont. 63, 72, 891 P.2d 477, 482.

¶14 We conclude that the State bears the burden of rebutting the presumptive prejudice that Hawkins suffered as a result of the 316-day delay in his trial. Nonetheless, we keep in mind the fact that the entire period of delay, being institutional in nature, does not weigh heavily against the State. In fact, there is no indication in the record that the prosecution acted in bad faith or harbored a motive to delay trial in this matter.

¶15 The third *Barker* factor, assertion of the right, is satisfied. As determined in *Bruce*, this factor is met whenever the defendant asserts the speedy trial right prior to commencement of trial. *Bruce*, ¶ 57. Hawkins complied with the third *Barker* factor by

filing his speedy trial motion prior to entry of his guilty plea.

¶16 The final *Barker* factor, prejudice to the defendant, is the most important. Prejudice to the defendant is the most weighty speedy trial element because " 'the inability of a defendant adequately to prepare his [or her] case skews the fairness of the entire system.' " *Bruce*, ¶ 19 (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118). Prejudice to the defendant can be established based upon any or all of the traditional bases for prejudice: (1) pre-trial incarceration; (2) anxiety and concern to the defendant; and (3) impairment of the defense. *Bruce*, ¶ 19.

¶17 Where, as in this case, the burden is on the State, the State's rebuttal evidence "should take into consideration, but need not include, all three traditional bases for prejudice . . . ." *Bruce*, ¶ 56. At a minimum, the State must address the question of whether there has been impairment of the defense and offer proof that the defense has not been impaired by the delay in bringing the defendant to trial. *Hardaway*, ¶ 22 (modifying *Bruce*). On the critical factor of prejudice to the defendant, we conclude, as discussed below, that the State has carried its burden of rebutting presumptive prejudice and showing that Hawkins did not suffer prejudice sufficient to sustain a speedy trial violation.

¶18 As the State argues and the District Court concluded, Hawkins did not, as a technical matter, suffer any pre-trial incarceration. In State v. Palmer (1986), 223 Mont. 25, 723 P.2d 956, we addressed a situation very similar to that presented here. While incarcerated at the Montana State Prison, the defendant in *Palmer* was charged with the felony offense of criminal possession of a deadly weapon by a prisoner. *See Palmer*, 223 Mont. at 26, 723 P.2d at 957. Although the defendant asserted on appeal that his speedy trial right had been violated due to delay in bringing him to trial, this Court determined that the defendant had not suffered any prejudice. Particularly, in addressing the speedy trial right's prevention of oppressive pre-trial incarceration, we held that the defendant "suffered no pretrial incarceration because he was already incarcerated for the duration of the proceedings on another charge." *Palmer*, 223 Mont. at 28, 723 P.2d at 959. The same can be said of Hawkins, who remained incarcerated on another charge during these proceedings.

¶19 Furthermore, we are not impressed with Hawkins' claim that the current charge has resulted in more oppressive conditions of incarceration, namely, by causing his administrative reclassification within the prison and the loss of several inmate privileges that he enjoyed prior to the escape. Similarly, Hawkins avers that he suffered prejudice

because at his annual parole hearing, the parole board would not hear his request for parole due to the pending charges. However, the liberty interest of a duly convicted inmate is indeed "minimal," and it must be remembered that prison disciplinary action takes place in a tightly controlled environment that is populated by individuals who have chosen to violate the criminal law and who have been lawfully incarcerated as a result. *See* Jellison v. Mahoney, 1999 MT 217, ¶ 8, 295 Mont. 540, ¶ 8, 986 P.2d 1089, ¶ 8 (quoting Wolff v. McDonnell (1974), 418 U.S. 539, 561, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935, 954).

¶20 Therefore, relative to an accused citizen facing a felony charge, a convicted felon serving a prison sentence has only a *de minimis* interest in being free from a highly structured environment of incarceration. Nor is there any evidence that Hawkins suffered more significant disciplinary hardship than would any inmate who violated not only the law, but also internal prison rules. Thus, we agree with the District Court that "[t]he fact that [Hawkins], through administrative procedure, lost [some of] his liberty within the prison is not oppressive incarceration that is grounds for dismissal of the escape charge." The State has met its burden of showing that Hawkins did not suffer oppressive pre-trial incarceration.

¶21 Nor can Hawkins be said to have suffered anxiety and concern of the type the speedy trial right is designed to protect against. As a duly convicted and incarcerated felon, Hawkins has already sacrificed many of the enjoyments of civil freedom. And, as a prisoner, he was undoubtedly aware of the severe consequences that an escape from prison would carry. Therefore, his assertions about the "serious personal anxiety" due to the escape charge are not well taken. "Anxiety and concern are an inherent part of being charged with a crime, and . . . [the State's] 'burden to show a lack of anxiety becomes considerably lighter in the absence of more than marginal evidence of anxiety.' " State v. Kipp, 1999 MT 197, ¶ 21, 295 Mont. 399, ¶ 21, 984 P.2d 733, ¶ 21 (quoting *Bruce*, ¶ 70). We conclude that the State has carried its burden of showing that Hawkins has not suffered any undue anxiety or concern due to the delay in bringing him to trial.

¶22 Lastly and most importantly, the State has demonstrated that Hawkins did not suffer impairment to his defense. At the hearing on his speedy trial motion, Hawkins was unable to name a single witness that had been lost on account of the pre-trial delay. Indeed, although represented by competent counsel, Hawkins did not even attempt to mount a factual defense to the escape charge. Since Hawkins "did not present a defense, it is clear that he was not prejudiced in this manner." *Palmer*, 223 Mont. at 29, 723 P.2d at 959. Nor, because Hawkins was represented by able and experienced counsel, do we find persuasive

his allegation that his defense was impaired by the recent administrative curtailment of law library privileges at the Montana State Prison.

¶23 No single factor of the *Barker* test is "indispensable or dispositive." *Tweedy*, 277 Mont. at 320, 922 P.2d at 1138; *accord Bruce*, ¶ 75. Rather, the four factors established in *Barker* are necessarily general guidelines to be applied on a case-by-case basis as part of a " 'difficult and sensitive balancing process.' " *See Bruce*, ¶ 20 (quoting *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118). After carefully balancing the *Barker* factors, we hold that Hawkins' right to a speedy trial was not violated and that the District Court correctly denied his speedy trial motion.

¶24 Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER