No. 04-746

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 169

MONTANA STATE FUND,

       Petitioner,

IN RE:  The Workers' Compensation Benefits of
TUCKER NOONKESTER
-------------------------------------------------------------------
TUCKER NOONKESTER,

       Petitioner and Respondent,

    v.

MONTANA STATE FUND,

       Respondent/Insurer for

C & S CONSTRUCTION, INC.,

       Employer and Appellant.

APPEAL FROM:    The Montana Workers' Compensation Court, Cause No. WCC 2002-0493,
               Honorable Mike McCarter, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Michael P. Heringer and Jeffrey McAllister, Brown Law Firm, P.C.,
              Billings, Montana

       For Respondents:

              James E. Edmiston, Edmiston, Schermerhorn & Colton, Billings, Montana

              David R. Paoli, Paoli & Shea, P.C. Missoula, Montana

              Thomas E. Martello, Montana State Fund, Helena, Montana

                    Submitted on Briefs:  August 10, 2005
                            Decided:  July 25, 2006

Filed:

_____
                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Workers' Compensation Court determined that Tucker Noonkester ("Tucker") could repudiate the workers' compensation claim filed on his behalf by his father. Tucker then repudiated the claim, and the court accordingly dismissed the petitions filed by him and the Montana State Compensation Insurance Fund ("State Fund") on the ground that no justiciable controversy remained. C & S Construction, Inc. ("C&S"), appeals from this judgment, raising two issues, which we restate as follows:

¶2 1. Did the Workers' Compensation Court err by ruling that Tucker's repudiation of his claim deprived the court of jurisdiction over the dispute between Tucker and C&S?

¶3 2. Did the Workers' Compensation Court err by vacating the hearing on Tucker's petition and granting him thirty days in which to repudiate his claim for workers' compensation benefits?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4 This case arises out of an automobile accident that took place August 9, 2000, on Interstate 94 between Huntley, Montana, and Forsyth, Montana. Tucker, who was fourteen years old at the time, was the passenger in a pickup owned by C&S and operated, with C&S's permission, by his seventeen-year-old brother, Colter Noonkester ("Colter"). Tucker and Colter, both C&S employees,[1] were traveling early that morning from their house in Huntley to a C&S jobsite in Forsyth when Colter fell asleep at the

---

[1]Tucker's status as an employee is not an issue herein.

2

wheel. The pickup left the pavement and rolled. As a result of the accident, Tucker suffered a serious closed head injury.

¶5 Later that morning, a C&S bookkeeper filled out and faxed a report of injury to the State Fund, C&S's workers' compensation insurer.[2] The report was later signed on Tucker's behalf by his father, Grant Noonkester ("Grant"), who was also an employee of C&S at the time. The State Fund accepted liability and thereafter paid indemnity and medical benefits.

¶6 On January 15, 2002, the State Fund initiated the instant action in the Workers' Compensation Court ("WCC"). Having determined that it owed Tucker permanent partial and temporary total disability benefits, it filed a petition seeking the court's direction regarding the best method of payment of these benefits, in view of Tucker's minority. The State Fund also requested the appointment of a guardian *ad litem* to represent Tucker's interests.

¶7 The WCC appointed James G. Edmiston ("Edmiston") as guardian *ad litem*. Edmiston commenced an investigation into the accident, concluded that Tucker may not have been in the course and scope of his employment at the time of the accident and that, therefore, he might have a claim against C&S based on Colter's alleged negligence. Depositions of a number of witnesses were taken and a settlement demand was made

---

[2]Pursuant to § 39-71-307(1), MCA, every employer insured under the Workers' Compensation Act by a plan No. 2 or a plan No. 3 insurer—as was C&S—is required to file with the insurer "a full and complete report of every accident, injury, or occupational disease to an employee arising out of or in the course of employment." The particular form used by C&S for this purpose also constitutes the injured employee's claim for workers' compensation benefits when signed by the employee or his representative.

3

upon C&S's liability insurer. It appears from the record that the insurer rejected the demand, relying on the exclusive remedy rule. *See* § 39-71-411, MCA (providing that an employer generally is not subject to liability for personal injury to an employee who is covered by the Workers' Compensation Act).

¶8　　Thereafter, on February 2, 2004, Tucker[3] filed a petition for hearing in the WCC, naming both the State Fund and C&S as adverse parties and seeking a determination that his injury was not suffered in the course and scope of his employment with C&S. His goal was to pursue a tort claim against Colter and C&S; however, under § 39-71-411, MCA, the election of workers' compensation benefits bars a tort action by an injured employee against his insured employer arising out of the same accident. Thus, Tucker sought through his petition to invalidate the claim filed on his behalf by Grant, which his counsel believed required a ruling by the WCC that he had not been in the course and scope of employment at the time of the accident.[4]

---

[3]Tucker reached eighteen years of age on December 16, 2003, at which time Edmiston's role as guardian *ad litem* terminated. However, Tucker has retained Edmiston as his attorney in this matter, with other co-counsel.

[4]In briefing, Tucker's lawyers have fallen on their swords regarding their chosen procedural strategy:

> It is probably not every day that attorneys come before this court and admit that they were wrong. It is not exactly a favorite thing for attorneys to do. But here, although Tucker's counsel filed for hearing in the Workers' Compensation Court in the first place, to ask the Court to find that Tucker was not in the course and scope of his employment, we were wrong (ouch).

Confession is good for the soul and much admired, even if here unnecessary: jurisdiction cannot be conferred by an erroneously filed petition. *See* ¶ 24, *infra*.

4

¶9 The State Fund adopted an essentially neutral position with respect to Tucker's petition, advising the WCC it would either resume paying benefits if Tucker could not invalidate his claim or seek reimbursement of benefits previously paid if he could invalidate his claim and did so. C&S, however, responded that Tucker *was* in the course and scope of his employment when he was injured. Indeed, Tucker explained that he had named C&S as an adverse party precisely for the reason that he and C&S had a dispute as to his status at the time of the accident. Both Tucker and C&S requested a finding favorable to their respective positions on this issue.

¶10 The WCC consolidated Tucker's petition with the State Fund's earlier petition, and scheduled the matter for trial on April 21, 2004. At the outset of the proceeding, before the parties had presented any evidence, the court questioned whether it had subject matter jurisdiction over the parties' dispute. It expressed an initial opinion that Tucker was free to repudiate the claim filed on his behalf by Grant and that if he did so, there would not be a claim for workers' compensation benefits to adjudicate—i.e., there would be no case or controversy before the court. Because the parties had not fully briefed this issue, the court afforded them time to do so and postponed the trial on the merits.

¶11 On August 27, 2004, following briefing by the parties, the court issued its Decision and Order, holding that Tucker could repudiate his claim and that if he did so, the petitions must be dismissed for lack of a justiciable controversy. Alternatively, if Tucker ratified the claim, then the only question that remained was the best method of payment of benefits.

5

¶12 The court granted Tucker thirty days to consider his options and then make a final election either to repudiate or to ratify the workers' compensation claim. On September 24, 2004, Tucker elected to repudiate the claim and pursue a tort action. Accordingly, the WCC dismissed both petitions with prejudice. C&S appeals from this judgment.

## STANDARD OF REVIEW

¶13 The determination that Tucker could repudiate his claim for benefits was a conclusion of law, as was the determination that the court lacked subject matter jurisdiction over the dispute between Tucker and C&S. We undertake plenary review of the WWC's conclusions of law to determine if they are correct. *Ruhd v. Liberty Northwest Ins. Corp.*, 2004 MT 236, ¶ 13, 322 Mont. 478, ¶ 13, 97 P.3d 561, ¶ 13. Granting Tucker thirty days in which to consider his options and then make a final election either to repudiate or to ratify his workers' compensation claim was a discretionary ruling. We review discretionary rulings by the WCC for abuse of discretion—that is, whether the court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason, resulting in substantial injustice. *State v. Ferguson*, 2005 MT 343, ¶ 22, 330 Mont. 103, ¶ 22, 126 P.3d 463, ¶ 22; *see also Stavenjord v. Montana State Fund*, 2003 MT 67, ¶ 15, 314 Mont. 466, ¶ 15, 67 P.3d 229, ¶ 15.

## DISCUSSION

¶14 *1. Did the Workers' Compensation Court err by ruling that Tucker's repudiation of his claim deprived the court of jurisdiction over the dispute between Tucker and C&S?*

6

¶15     C&S asserts that Tucker's repudiation of his workers' compensation claim did not deprive the WCC of jurisdiction over the dispute between him and C&S concerning his status at the time of the accident. Rather, C&S argues that the WCC obtained jurisdiction over this matter when it appointed a guardian *ad litem* to represent Tucker on February 4, 2002, and when Tucker, having turned eighteen years of age, filed his petition for hearing on February 2, 2004. C&S further contends that the court's jurisdiction encompassed all of the issues that arose between the parties named in the two petitions before the court, but at the very least it encompassed the issue of whether Tucker was in the course and scope of employment at the time of the accident. Thus, C&S concludes, the WCC "had no basis to refuse to hear the dispute."

¶16     Tucker's petition for hearing presented one question—whether he was in the course and scope of employment at the time of the accident—in the context of two discrete disputes, one between him and the State Fund and the other between him and C&S. With respect to the former, Tucker's petition operated as a response to the State Fund's petition, contesting the State Fund's earlier finding (implicit in its acceptance of liability on the claim filed by Grant on Tucker's behalf) that he had been injured in the course and scope of his employment with C&S. In other words, Tucker contended not that benefits were being improperly withheld, but rather that benefits had been improperly paid, albeit in response to his original claim. The WCC, accordingly, construed his petition vis-à-vis the State Fund as an attempted repudiation of his claim.[5]

---

[5]C&S contests this characterization. It argues that "once Tucker reached the age of majority, he did not attempt to repudiate, but instead, he chose the Workers'

Although the State Fund adopted a neutral position on this issue, the question remained as to whether Tucker nevertheless was legally bound by the actions of Grant in submitting the claim and accepting benefits on Tucker's behalf.

¶17    Regarding the second dispute, C&S's response asserted that Tucker had been injured in the course and scope of his employment and that he was estopped from asserting otherwise because "[Tucker] and his parents have represented that he was injured in the course and scope of his employment and have received [benefits]" under the Workers' Compensation Act.  C&S asked that Tucker's petition be dismissed with prejudice and no relief be granted.

¶18    In a thorough opinion, the WCC determined that Tucker was not bound by the claim filed on his behalf when he was a minor.  The WCC reasoned that Grant, who had signed the claim as Tucker's parent and not as his legal guardian, did not have the legal

---

Compensation Court as the forum to litigate the issue of whether he was in the course and scope of employment at the time of injury."  In other words, C&S seems to suggest that Tucker's petition served only to litigate the merits of C&S's exclusive remedy defense. We disagree.  As between Tucker and C&S, the petition does appear to be an attempt at litigating the exclusive remedy issue; however, *as between Tucker and the State Fund*, the purpose of the petition was to invalidate his workers' compensation claim so that he could pursue a tort action against Colter and C&S.  Indeed, at the April 21, 2004, hearing, Edmiston explained that he had raised the course and scope issue only because he "was under the mistaken assumption that in order to repudiate the claim . . . a ruling on the course and scope issue [was required]."  Thus, the WCC's interpretation of the petition vis-à-vis the State Fund as an attempted repudiation was reasonable under the circumstances.

8

authority to thereby waive Tucker's right to pursue a tort claim based on the accident, and that Tucker was free to repudiate his claim.[6]

¶19 The court then concluded that since Tucker could repudiate his claim, no justiciable controversy existed, either between Tucker and the State Fund, or between Tucker and C&S. Regarding the dispute between Tucker and C&S about whether the injury occurred in the course and scope of Tucker's employment, the WCC concluded that it did not have jurisdiction to decide the issue "because [that issue] doesn't involve the Workers' Compensation claim. It involves the tort action."

¶20 Section 39-71-2905(1), MCA, confers jurisdiction upon the WCC for disputes "concerning any benefits under chapter 71 of this title," and does not encompass a dispute between an employee and his employer concerning the merits of the employer's exclusive remedy defense in a separate tort action. To be sure, if Tucker had sought workers' compensation benefits and the State Fund or employer had denied that he had been injured in the course and scope of employment, then the WCC would have had jurisdiction to adjudicate the course and scope issue, since the dispute would then have concerned "benefits under chapter 71 of [title 39]." But here, the course and scope issue as between Tucker and C&S—a separate dispute relating to the tort action—did not concern workers' compensation benefits.

---

[6]To the extent it could be argued that Tucker was under a contractual obligation to the State Fund, we note that § 41-1-304, MCA, permits a minor to disaffirm a contract entered during minority upon restoring the consideration to the other contracting party.

¶21 We have previously decided a similar case. In *Alaska Pac. Assur. Co. v. L.H.C., Inc.* (1981), 191 Mont. 120, 622 P.2d 224, Raines, a truck driver, was involved in a collision that killed the driver of another truck. The victim was an employee of L.H.C. The victim's widow sued Raines for wrongful death in district court, asserting that Raines was not a co-employee of the victim, but rather was an independent contractor, which Raines disputed. If Raines had been an employee of L.H.C., then he could not be sued by his co-employee because of the exclusive remedy provision of the Workers' Compensation Act. *See Alaska Pac.*, 191 Mont. at 121-22, 622 P.2d at 225. Both Raines and Alaska Pacific Assurance Company (L.H.C.'s compensation insurance carrier) filed a petition in the Workers' Compensation Court seeking a ruling that Raines was an employee and not an independent contractor. Raines and Alaska Pacific justified this petition on the ground that L.H.C.'s refusal to acknowledge Raines as one of its employees was preventing Alaska Pacific from paying Raines workers' compensation benefits, which it stated it wanted to do. *See Alaska Pac.*, 191 Mont. at 123, 622 P.2d at 226.

¶22 The WCC dismissed the petition, and we affirmed, concluding that the proceedings before the WCC had been commenced with the objective of obtaining a ruling there and then taking that ruling before the district court to be used in support of Raines's motion to dismiss the wrongful death action. *See Alaska Pac.*, 191 Mont. at 124, 125, 622 P.2d at 226, 227. We noted that neither Raines nor Alaska Pacific was genuinely concerned with obtaining compensation benefits for Raines; "rather, they were concerned with affecting the District Court suit by obtaining a ruling before the Workers'

10

Compensation Court that Raines was an employee of L.H.C., Inc." *Alaska Pac.*, 191 Mont. at 126, 622 P.2d at 227. We imposed sanctions on Alaska Pacific for "abus[ing] the court system in its efforts to avoid meeting the issues head-on in District Court." *Alaska Pac.*, 191 Mont. at 126, 622 P.2d at 227.

¶23 Although the circumstances here are not identical in that Tucker and C&S are adverse in the separate tort action, whereas Raines and Alaska Pacific had a common interest in obtaining a ruling for the tort action, the principle of that case is nonetheless applicable. The WCC has jurisdiction over "dispute[s] concerning any benefits under chapter 71 of this title," § 39-71-2905(1), MCA, and may not be employed for the sole purpose of obtaining a ruling that the prevailing party then can seek to import into a separate tort action, which C&S sought to do. Once Tucker had repudiated his claim and workers' compensation benefits were no longer an issue, there was no further statutory purpose the WCC could fulfill as between Tucker and the State Fund. As to Tucker and C&S, the WCC never had jurisdiction in the first place because that dispute did not involve workers' compensation benefits.

¶24 In response to C&S's argument that the WCC had jurisdiction over the course and scope issue by virtue of Tucker's petition and the stipulation in the parties' pre-trial order, Tucker correctly argues that jurisdiction cannot be conferred by the filing of a petition or by stipulation. As we have previously stated, "[j]urisdiction is defined by law" and "cannot be conferred by consent of the parties or the court." *State v. Evert*, 2004 MT 178, ¶ 14, 322 Mont. 105, ¶ 14, 93 P.3d 1254, ¶ 14. Accordingly, the WCC's jurisdiction over the pre-repudiation dispute between Tucker and the State Fund did not

11

extend to the dispute between Tucker and C&S by virtue of his naming C&S in his petition.

¶25    For the foregoing reasons, the WCC correctly determined that it did not have jurisdiction over the dispute between Tucker and C&S regarding whether he was injured in the course and scope of employment. Accordingly, we conclude that the WCC, upon receiving Tucker's election to repudiate his workers' compensation claim, properly dismissed his and the State Fund's petitions.

¶26    *2. Did the Workers' Compensation Court err by vacating the hearing on Tucker's petition and granting him thirty days in which to repudiate his claim for workers' compensation benefits?*

¶27    The WCC vacated the April 21, 2004, hearing on the ground that "it would be pointless to proceed with trial" if there is no case or controversy to adjudicate. Then, in its later Decision and Order, the court granted Tucker thirty days to consider his options and then make a final election either to repudiate or to ratify the workers' compensation claim. C&S claims that the WCC erred in vacating the hearing and in granting Tucker the thirty days. It argues that Tucker "chose to invoke the jurisdiction of the [WCC] by asking it to resolve the dispute as to whether he was injured in the course and scope of employment. Once Tucker had chose [sic] this course, the Court had no authority to allow Tucker additional time to repudiate [his claim]."

¶28    Tucker responds that the issue of subject matter jurisdiction can be raised by a court *sua sponte*; thus, the WCC did not act improperly by raising the jurisdictional question and vacating the hearing to give the parties time to brief the issue. He also

12

argues that thirty days was "a reasonable period of time" to grant him so that he could consider his options.

¶29 We agree with Tucker. For one thing, "[t]he issue of subject matter jurisdiction may be raised by a party, or by the court itself, at any stage of a judicial proceeding." *State v. Tweedy* (1996), 277 Mont. 313, 315, 922 P.2d 1134, 1135. Thus, the WCC did not act arbitrarily by raising this issue. Moreover, C&S has not convinced us that vacating the hearing so that the parties could brief the jurisdiction issue and granting Tucker the thirty-day period to consider his options were beyond the bounds of reason.

¶30 C&S claims that it was "severely prejudiced by the [WCC's] Order" because it "was fully prepared for the hearing and was fully prepared to prove that Tucker was within the scope and course of his employment at the time of the accident." However, the court's jurisdiction was a prerequisite to its rendering a ruling in the Tucker/C&S dispute, and it had little choice but to raise the issue. C&S also alleges that it "has been precluded from presenting its statutory exclusive remedy defense in response to Tucker's claims." This purported prejudice however, relates to the failure of C&S's efforts to intervene in Tucker's tort action against Colter, which is not the issue here.[7] But even if

---

[7]On October 7, 2004, after he had repudiated his workers' compensation claim, Tucker filed a tort action in the District Court for the Thirteenth Judicial District, Yellowstone County (Cause No. DV 04-1053, *Noonkester v. Noonkester*). He named Colter as the sole defendant, and Colter subsequently filed an answer wherein he admitted liability. C&S filed a motion to intervene, arguing that Tucker was in the course and scope of his employment with C&S at the time of the accident. The District Court denied the motion; thus, C&S filed with this Court an application for writ of supervisory control (No. 05-088). C&S contended that before the amount of Tucker's damages may be adjudicated, it must be determined whether Tucker was in the course and scope of his employment with C&S at the time of the accident. If he was, C&S

13

C&S has in fact been so precluded, such prejudice cannot overcome the jurisdictional bar to presenting the defense in the WCC.

¶31   Thus, we conclude that the WCC did not abuse its discretion by raising, *sua sponte*, the issue of its subject matter jurisdiction and vacating the April 21, 2004, hearing.  Nor did it abuse its discretion by granting Tucker thirty days to file his election.

¶32   Affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

argued, then the Workers' Compensation Act would be his exclusive remedy and his cause of action against Colter would be barred as a matter of law.  We denied C&S's application on March 1, 2005.